IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALIGN TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **REDACTED - PUBLIC VERSION** |
| | ) | |
| v. | ) | C.A. No. 17-1646-LPS |
| | ) | |
| 3SHAPE A/S and 3SHAPE, INC., | ) | ███████████████ |
| | ) | |
| Defendants. | ) | |
| ALIGN TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **REDACTED - PUBLIC VERSION** |
| | ) | |
| v. | ) | C.A. No. 17-1647-LPS |
| | ) | |
| 3SHAPE A/S and 3SHAPE, INC., | ) | ███████████████ |
| | ) | |
| Defendants. | ) | |

## LETTER TO THE HONORABLE CHRISTOPHER J. BURKE FROM JEFF CASTELLANO

OF COUNSEL:
Blair M. Jacobs
Christina A. Ondrick
John S. Holley
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC 20005
(202) 551-1700

Thomas A. Counts
PAUL HASTINGS LLP
101 California Street
Forty-Eighth Floor
San Francisco, CA 94111
(415) 856-7000

Dated: January 11, 2019

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Jeffrey T. Castellano (No. 4837)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
jcastellano@shawkeller.com
*Attorneys for Plaintiff*



Jeff Castellano
I.M. Pei Building
1105 North Market St., 12th Floor
Wilmington, DE 19801
(302) 298-0703 - Direct
jcastellano@shawkeller.com

January 11, 2019



REDACTED - PUBLIC VERSION

**BY CM/ECF & HAND DELIVERY**
The Honorable Christopher J. Burke
United States District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801

> Re:   *Align Technology, Inc. v. 3SHAPE A/S et al.,* C.A. Nos. 17-1646 & 17-1647-LPS

Dear Judge Burke:

Align Technology, Inc. ("Align") respectfully seeks orders compelling 3Shape A/S and 3Shape Inc. ("Defendants") to properly respond to certain interrogatories issued in the above-referenced cases.  In accordance with Your Honor's oral orders, dated January 7, 2019, Align outlines the issues in dispute below.

## I.    Background

Align served interrogatories on Defendants in October 2018.  The interrogatories seek information traditionally requested in patent litigation, including information regarding Defendants' contentions with respect to non-infringement.  The interrogatories also seek basic information that is critical for the efficient disposition of document and deposition discovery, such as the identities of Defendants' personnel who are most knowledgeable about relevant technical features of the products at issues.  Despite numerous emails, letters and phone calls between the parties about these interrogatories, Defendants refuse to properly answer these interrogatories.

## II.    Unanswered Interrogatories in Dispute

**Interrogatory 1 (Both Cases).**  Align asked Defendants to identify their products that include "functionality that is the same or substantially the same as the functionality identified in Align's initial infringement contentions."  (Ex. 1[1] at 10.)  Defendants provided no substantive response.  Instead, they objected and contended that they cannot respond because of alleged deficiencies in Align's infringement contentions—despite never previously asserting any such alleged deficiencies.  (*Id.* at 11.)  Defendants are best positioned to know the functionality of their own

---

[1] Attached hereto as Exhibits 1 and 2 are Defendants' responses to the interrogatories served in the 1646 and 1647 cases, respectively. Citations are to the 1646 case interrogatories and responses unless relevant differences exist.  Attached hereto as Exhibits 3 and 4 are the definitions used for Align's interrogatories to Defendants in the 1646 and 1647 cases, respectively.

SHAW KELLER LLP
The Honorable Christopher J. Burke
Page 2

products and can properly answer this interrogatory given the clarity of the functionality as described in Align's contentions. Likewise, any alleged sub-parts relate to the main inquiry and it would be prejudicial and inefficient to require a party to mince interrogatories as Defendants propose.

**Interrogatories 2 and 13 (Both Cases).** Align asked Defendants to provide their non-infringement positions (Ex. 1 at 11) and to identify comparable licenses (*id.* at 39). Defendants refused to respond, contending that these are "contention" interrogatories and because of unidentified "deficiencies" in Align's infringement contentions. This response is baseless as "[t]he Court encourages the parties to serve and respond to contention interrogatories early in the case," (D.I. 42 ¶ 8(d)(ii)), and Align's infringement contentions are clear. Given that these cases have been filed for some time now and fact discovery ends in July and September of this year, Align is entitled to Defendants' contentions. *See, e.g.*, *Wi-LAN Inc. v. VIZIO, Inc.*, C.A. No. 15-788-LPS, Oral Order (D.I. 204) (D. Del. April 13, 2018) ("Interrogatories are necessary to advance the orderly pretrial development of the case . . . ."). Defendants also repeated their multiple sub-part argument for Interrogatory 2 but, as noted above, any alleged sub-parts are part of the main inquiry and counting interrogatories in the manner suggested by Defendants would be highly prejudicial.

**Interrogatories 3-4 (Both Cases).** Align asked for information regarding Defendants' awareness of the asserted patents or genealogically related patents, along with any analysis undertaken of those patents. (Ex. 1 at 13-16.) This is highly relevant to indirect infringement and willfulness, among other things. Defendants refused to provide information regarding any genealogically related patents, and with respect to the asserted patents they simply stated that they were aware of them as of the filing of the complaint and that they would "investigate" whether they had earlier awareness. This is plainly insufficient and provides no information while avoiding discovery on crucial knowledge issues.

**Interrogatory 5 (Both Cases).** Align asked for information about the manufacture, sales, and importation of Defendants' products. (Ex. 1 at 17.) This is relevant to damages and infringement. Defendants objected on the ground that the interrogatory has multiple sub-parts, but the sub-parts seek basic related information.

**Interrogatory 9 (Both Cases).** Align narrowed this interrogatory and now seeks the identity of Defendants' personnel most knowledgeable about certain aspects of Defendants' products, including specific functionality at issue. (Ex. 1 at 32-33.) Despite Align's compromise, Defendants have identified just one purportedly knowledgeable individual for each overarching, multi-featured 3Shape software product (*e.g.*, 3Shape's entire Dental System software). This is implausible on its face and is a transparent effort to avoid discovery obligations.

**Interrogatory 10 (Both Cases).** Align narrowed this interrogatory and now requests solely information regarding "policies, procedures, or practices" that Defendants have established to determine if they infringe any U.S. patent, and the 3 persons most knowledgeable. (Ex. 1 at 35.) Defendants' response, however, attempts to avoid discovery obligations by limiting the response to "**written** policies [and] **written** procedures," and "**formal** unwritten polic[ies], procedure[s],

SHAW KELLER LLP
The Honorable Christopher J. Burke
Page 3

[and] practice[s].” (*Id.* (emphasis added).) Defendants also failed to identify personnel knowledgeable about the issues.

**Interrogatory 11 (Both Cases).** Align asked for information concerning the development and benefits associated with the Defendants' products at issue, along with identification of the documents supporting such descriptions. (Ex. 1 at 35.) Defendants failed to provide any descriptions whatsoever. Instead, Defendants impermissibly cited to several thousand non-specific pages of discovery, at least some of which have no bearing on the question.

**Interrogatory 12 (Both Cases).** Align asked Defendants to identify various agreements related to the accused products in the cases including, for example, license agreements, settlement agreements, and sale or resale agreements, as well as the identity of personnel most knowledgeable about them. (Ex. 1 at 37.) Defendants refused to provide any answer. Instead, they objected based on the allegation that the interrogatory contains multiple sub-parts. Defendants are wrong because the subparts all relate to similar topics.

**Interrogatories 14-15 (Both Cases).** Align asked Defendants to identify the persons most knowledgeable, including in the United States, about various technical functions of the accused products. (Ex. 1 at 40-41; Ex. 2 at 40-41.) For Interrogatory 14, Defendants identified just one individual for each multi-featured 3Shape software product (*e.g.*, Defendants' entire Dental System software). For Interrogatory 15, Defendants repeated the same names in the 1646 case and, in the 1647 case, only provided a couple of additional names despite the fact that the functionality is different. Nobody in the United States was identified. This is clearly an effort to shield the Defendants from necessary discovery.

**Interrogatory 16 (Both Cases).** Align asked for information regarding indemnification relating to the patents-in-suit, including any requests for indemnification and indemnification agreements. (Ex. 1 at 42.) Defendants' response was improperly limited to indemnification requests "prior to the initiation" of the present cases, and written indemnification agreements that only expressly and specifically name the asserted patents. This response is myopically deficient because the interrogatory is not limited to the time period before the filing of the case and would also include written indemnification agreements that would cover or include the subject matter of the asserted patents, even if they are not named by number.

**Interrogatory No. 18 (1646 Case).** Align asked for information regarding a specific product feature relevant to multiple patents in this case, including the persons most knowledgeable in the United States. (Ex. 1 at 45.) In response, Defendants provided no substantive information and identified only one person "with knowledge" of the feature who is located in Denmark. (*Id.* at 48.) The response is facially deficient on both fronts.

*      *      *

Align appreciates the Court's assistance in resolving these disputes and looks forward to answering any questions the Court may have during the scheduled teleconference.

SHAW KELLER LLP
The Honorable Christopher J. Burke
Page 4

Respectfully submitted,

*/s/ Jeff Castellano*

Jeff Castellano (No. 4837)

cc:    Clerk of the Court (by hand delivery)
        All counsel of record (by e-mail)

# EXHIBIT 1

REDACTED

# EXHIBIT 2
# REDACTED

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALIGN TECHNOLOGY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-1646-LPS |
| | ) | |
| 3SHAPE A/S and 3SHAPE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF ALIGN TECHNOLOGY, INC.'S
FIRST SET OF REQUESTS FOR THE PRODUCTION OF
<u>DOCUMENTS AND THINGS TO DEFENDANT 3SHAPE, INC.</u>**

Pursuant to Federal Rules of Civil Procedure 26 and 34 and the Local Rules of this Court, Plaintiff Align Technology, Inc. hereby requests that 3Shape, Inc. produce documents and things in response to the following requests in accordance with the following Definitions and Instructions.  Unless otherwise agreed, production is to be made at the offices of Paul Hastings LLP, 875 15th Street, NW, Washington, DC 20005.

## DEFINITIONS

1.      "3Shape" means any company name under which 3Shape, Inc. is doing business, including, without limitation, its predecessors, all parent companies, partners, wholly or partially owned subsidiaries, sister companies, such as 3Shape A/S, divisions, past or present affiliated corporations, and each of their employees, agents, officers, directors, representatives, consultants, accountants, attorneys, distributors, contractors, and any other persons acting or purporting to act on behalf of any of the foregoing including any person who served in any such capacity at any time.  This definition includes each 3Shape entity identified at 3Shape_ITC_00037545.

2.      "Align" means Align Technology, Inc., including, without limitation, its predecessors, successors, parents, subsidiaries (whether owned directly or indirectly), affiliates, divisions and operating units thereof, agents and entities under common control with them. Align further includes, without limitation, Cadent Holdings, Inc., its predecessors, successors, parents, subsidiaries (whether owned directly or indirectly), affiliates, divisions and operating units thereof, agents and entities under common control with them.

3.      "Align Product(s)" and "Align's Product(s)" means Align's intraoral scanners and associated software, Align's software related to the iTero, the Eraser tool, the TimeLapse tool, the finish line editing tool, Align's articulator, Align's 3D models of a dentition, and Align's TREAT and FAB software.

4.      "3Shape Product(s)" and "3Shape's Product(s)" means 3Shape TRIOS mono system, 3Shape TRIOS 3 mono system, 3Shape TRIOS color system, 3Shape TRIOS 3 color system, 3Shape TRIOS 3 Wireless system, 3Shape TRIOS software, 3Shape TRIOS Module, 3Shape Dental System, 3Shape Ortho System, 3Shape articulator, 3Shape Model Builder,

3Shape Patient Monitoring, and any 3Shape product identified as infringing by Align, including any 3Shape product that incorporates, relies upon, integrates with, utilizes, or otherwise identifies or relates to the functionality identified as infringing by Align.

5.      "Competing Products" means any component or product known internally or commercially to You, in whole or in part, to compete with any of 3Shape's Products.

6.      "3Shape Customer(s)" and "3Shape's Customer(s)" means any distributor, reseller, potential purchaser, purchaser, retailer, dentist, dental office, dental practice, orthodontist, orthodontic office, orthodontic practice, university, laboratory, laboratory technician, dental service organization, known internally or commercially to You, in whole or in part, to have purchased, facilitated the purchase of, or inquired about purchasing, acquired, distributed, resold, or leased any 3Shape Product within the United States.

7.      "Including" or any variant thereof means "including without limitation."

8.      "And" and "or" mean "and/or," and shall be construed both conjunctively as well as disjunctively in order to maximize their scope.

9.      "Any" and "all" and "each" mean "each and every."

10.     "Each" and "every" mean "each and every."

11.     "Case" means *Align Technology, Inc. v. 3Shape A/S and 3Shape, Inc.*, No. 17-1646-LPS-CJB.

12.     "Asserted Patents" means any patent that Align alleges infringement of in this litigation, including. U.S. Patent Nos. 7,112,065; 8,454,364; 8,845,330; 9,299,192; 9,427,916; and 9,510,757.

13.     "You," "Your," or "Yours" mean 3Shape, as defined herein.

14.     "Asserted Claims" means all claims for which Align alleges infringement of in this Case, as reflected in Align's Infringement Contentions.  Nothing in these discovery requests are meant to broaden or limit the Asserted Claims.

15.     "Third Party" means a Person or Entity other than Align or 3Shape.

16.     "Thing(s)" has the broadest meaning allowable under Federal Rule of Civil Procedure 34 and includes any tangible object other than a document and, without limitation, objects of every kind and nature, as well as prototypes, models, or physical specimens thereof.

17.     "Document(s)" has the same broad meaning as used in Federal Rule of Civil Procedure 34, and includes, without limitation, anything or any written or graphic matter or any medium of any type or description upon which intelligence or information is recorded, or from which intelligence or information can be perceived, including computer, electronic, magnetic and optical media of all kinds, which is or has been in the possession, custody or control of 3Shape, or of which 3Shape has knowledge, including the original and any non-identical copy (whether different from the original because of notes made on said copy or otherwise) of any advertising literature; agreement; bank record or statement; blueprint; book; book of account; booklet; brochure; calendar; chart; circuit diagram; circular; coding form; communication (intra- or inter-company); components listing; computer data; computer printout; computer software and supporting indices; data; documentation; flow charts; comments; object code; firmware; Source Code and computer programs; contract; copy; correspondence; data base; design document; diary; die; display; draft of any document; drawing; electronic mail (e-mail); engineering change order; engineering specification; film, film transparency; flyer; forecast; graph; index; instruction; instruction manual or sheet; internet pages; invoice; job requisition; letter; license; log; machine readable form; manual; manufacturing data; manufacturing drawing; map;

marketing plan; mask; memoranda; minutes; model; newspaper or other clippings; notes; notebook; opinion; packing checklist; packing list; pamphlet; paper; periodical or other publications; photograph; physical object; press release; price list; print; printed circuit board; product brochure; product specification; promotional literature; prototype; receipt; record; recorded read-only memory ("ROM"); recording; report; sales data; schematic; sketch; solicitation; statement; statistical compilation; stenographic note; study; summary (including any memoranda, minutes, notes, records or summary of any (a) telephone or intercom conversation or message, (b) conversation or interview, or (c) meeting or conference); technical, service or operational manual; technical specification; telegram; telephone log; timing diagram; travel or expense records; video recording; videotape; voice recording; voucher; worksheet or work paper; and any other documentary material of any nature.

18.    "Source Code" " means any source code for software or firmware, hardware code, assembly code, or other computer code, including but not limited to any code written in an assembly language, human-readable programming language text that defines software, firmware, electronic hardware descriptions of application-specific integrated circuits or ASICs, text files containing source code, software source code files including, but are not limited to files containing source code in Pascal, "C", "C++", BREW, Java ME, J2ME, assembler, digital signal processor ("DSP") programming languages, and other human readable text programming languages, include files, make files, link files, and other human-readable text files used in the generation and/or building of software directly executed on a microprocessor, micro-controller, or DSP, hardware source code files including, but not limited to files containing source code in Hardware Design Language ("HDL"), VHDL, Verilog, or other RTL language.

19.     "Person" or "persons" means an individual, corporation, proprietorship, partnership, association, or any other entity.

20.     "Entity" means any natural person, corporation, partnership, sole proprietorship, firm, board, joint venture, association, agency, authority, commission or other business entity or juristic person.

21.     "Regarding" means concerning, describing, comprising, referring to, related to, supporting, favoring, opposing, bolstering, detracting from, located in, considered in connection with, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to, connected with, commenting on, in respect of, about, in relation to, discussing, showing, describing, reflecting, analyzing constituting, and being.

22.     "Relating to" or "related to," when referring to any given subject matter, means, without limitation, any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

23.     "Communication" or "communicated" means any contact between two or more entities by which any information or knowledge is transmitted or conveyed or attempted to be transmitted or conveyed, including written contact including letters, memoranda, telegrams, telefaxes, telecopies, telexes, text messages or e-mails, and oral contact including face-to-face meetings, telephone conversations, voicemails, answering machine messages and telephonic notes.

24.     The term "identify" when used in conjunction with a person means to provide, to the extent known, the person's full name, present or last known address, and telephone number, country of residence, and country of citizenship; and when referring to a natural person,

additionally, the present or last known place of employment and, when referring to a current or former director, officer, manager or other employee of 3Shape, additionally the title(s) or position(s) held by such person, the time periods during which such person held such position(s), and a /description of the responsibilities of such person to those position(s).

25.     The term "identify," when used with respect to any legal entity, such as a corporation, company, or person other than a natural person, means that the following information shall be provided:  the entity's name; the principal place of business; and the nature of the business conducted by that legal entity.

26.     The term "identify" when used in conjunction with a document or other thing means to specify the document or thing in sufficient detail to permit Align to locate the document or thing.

27.     "Employee" means all current and former persons employed by You.

28.     "Date" means the exact day, month, and year, if ascertainable, or, if not, the best approximation thereof.

29.     "Prior Art" means all publications, patents, physical specimens, products, devices, uses, sales, offers for sale, or other activities relating to the subject matter of the Asserted Patents and existing or occurring prior to the earliest filing date of the Asserted Patents.

30.     Use of the singular is also taken to include the plural, and vice-versa.

31.     The use of the word "the" shall not be construed as limiting the scope of any request.

### **INSTRUCTIONS**

1.     You are to search all documents within Your possession, custody, or control, wherever located, including but not limited to any documents placed in storage facilities or in the

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALIGN TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-1647-LPS |
| | ) | |
| 3SHAPE A/S and 3SHAPE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF ALIGN TECHNOLOGY, INC.'S
FIRST SET OF REQUESTS FOR THE PRODUCTION OF
<u>DOCUMENTS AND THINGS TO DEFENDANT 3SHAPE, INC.</u>**

Pursuant to Federal Rules of Civil Procedure 26 and 34 and the Local Rules of this Court, Plaintiff Align Technology, Inc. hereby requests that 3Shape, Inc. produce documents and things in response to the following requests in accordance with the following Definitions and Instructions.  Unless otherwise agreed, production is to be made at the offices of Paul Hastings LLP, 875 15th Street, NW, Washington, DC 20005.

## DEFINITIONS

1.      "3Shape" means any company name under which 3Shape, Inc. is doing business, including, without limitation, its predecessors, all parent companies, partners, wholly or partially owned subsidiaries, sister companies, such as 3Shape A/S, divisions, past or present affiliated corporations, and each of their employees, agents, officers, directors, representatives, consultants, accountants, attorneys, distributors, contractors, and any other persons acting or purporting to act on behalf of any of the foregoing including any person who served in any such capacity at any time.  This definition includes each 3Shape entity identified at 3Shape_ITC_00037545.

2.      "Align" means Align Technology, Inc., including, without limitation, its predecessors, successors, parents, subsidiaries (whether owned directly or indirectly), affiliates, divisions and operating units thereof, agents and entities under common control with them. Align further includes, without limitation, Cadent Holdings, Inc., its predecessors, successors, parents, subsidiaries (whether owned directly or indirectly), affiliates, divisions and operating units thereof, agents and entities under common control with them.

3.      "Align Product(s)" and "Align's Product(s)" means Align's intraoral scanners and associated software, Align's software related to the iTero, treatment planning and visualization tools, template creation, and orthodontic viewpoints, Align's 3D models of a dentition, Smile Architect, Outcome Simulator, ClinCheck, and Align's TREAT and FAB software.

4.      "3Shape Product(s)" and "3Shape's Product(s)" means 3Shape TRIOS mono system, 3Shape TRIOS 3 mono system, 3Shape TRIOS color system, 3Shape TRIOS 3 color system, 3Shape TRIOS 3 Wireless system, 3Shape TRIOS software, 3Shape TRIOS Module, 3Shape Dental System, 3Shape Ortho System, and including but not limited to 3Shape's Smile

Designer and RealView Engine of Dental System, Bracket Placement Workflow, Indirect Bonding, orthodontic viewpoints and any 3Shape product identified as infringing by Align, including any 3Shape product that incorporates, relies upon, integrates with, utilizes, or otherwise identifies or relates to the functionality identified as infringing by Align.

5.      "Competing Products" means any component or product known internally or commercially to You, in whole or in part, to compete with any of 3Shape's Products.

6.      "3Shape Customer(s)" and "3Shape's Customer(s)" means any distributor, reseller, potential purchaser, purchaser, retailer, dentist, dental office, dental practice, orthodontist, orthodontic office, orthodontic practice, university, laboratory, laboratory technician, dental service organization, known internally or commercially to You, in whole or in part, to have purchased, facilitated the purchase of, or inquired about purchasing, acquired, distributed, resold, or leased any 3Shape Product within the United States.

7.      "Including" or any variant thereof means "including without limitation."

8.      "And" and "or" mean "and/or," and shall be construed both conjunctively as well as disjunctively in order to maximize their scope.

9.      "Any" and "all" and "each" mean "each and every."

10.      "Each" and "every" mean "each and every."

11.      "Case" means *Align Technology, Inc. v. 3Shape A/S and 3Shape, Inc.*, No. 17-1647-LPS-CJB.

12.      "Asserted Patents" means any patent that Align alleges infringement of in this litigation, including. U.S. Patent Nos. 6,227,850; 7,056,115; 8,092,215; 8,545,221; 8,734,149; and 9,566,132.

13.      "You," "Your," or "Yours" mean 3Shape, as defined herein.

14.    "Asserted Claims" means all claims for which Align alleges infringement of in this Case, as reflected in Align's Infringement Contentions.  Nothing in these discovery requests are meant to broaden or limit the Asserted Claims.

15.    "Third Party" means a Person or Entity other than Align or 3Shape.

16.    "Thing(s)" has the broadest meaning allowable under Federal Rule of Civil Procedure 34 and includes any tangible object other than a document and, without limitation, objects of every kind and nature, as well as prototypes, models, or physical specimens thereof.

17.    "Document(s)" has the same broad meaning as used in Federal Rule of Civil Procedure 34, and includes, without limitation, anything or any written or graphic matter or any medium of any type or description upon which intelligence or information is recorded, or from which intelligence or information can be perceived, including computer, electronic, magnetic and optical media of all kinds, which is or has been in the possession, custody or control of 3Shape, or of which 3Shape has knowledge, including the original and any non-identical copy (whether different from the original because of notes made on said copy or otherwise) of any advertising literature; agreement; bank record or statement; blueprint; book; book of account; booklet; brochure; calendar; chart; circuit diagram; circular; coding form; communication (intra- or inter-company); components listing; computer data; computer printout; computer software and supporting indices; data; documentation; flow charts; comments; object code; firmware; Source Code and computer programs; contract; copy; correspondence; data base; design document; diary; die; display; draft of any document; drawing; electronic mail (e-mail); engineering change order; engineering specification; film, film transparency; flyer; forecast; graph; index; instruction; instruction manual or sheet; internet pages; invoice; job requisition; letter; license; log; machine readable form; manual; manufacturing data; manufacturing drawing; map;

marketing plan; mask; memoranda; minutes; model; newspaper or other clippings; notes; notebook; opinion; packing checklist; packing list; pamphlet; paper; periodical or other publications; photograph; physical object; press release; price list; print; printed circuit board; product brochure; product specification; promotional literature; prototype; receipt; record; recorded read-only memory ("ROM"); recording; report; sales data; schematic; sketch; solicitation; statement; statistical compilation; stenographic note; study; summary (including any memoranda, minutes, notes, records or summary of any (a) telephone or intercom conversation or message, (b) conversation or interview, or (c) meeting or conference); technical, service or operational manual; technical specification; telegram; telephone log; timing diagram; travel or expense records; video recording; videotape; voice recording; voucher; worksheet or work paper; and any other documentary material of any nature.

18.    "Source Code" " means any source code for software or firmware, hardware code, assembly code, or other computer code, including but not limited to any code written in an assembly language, human-readable programming language text that defines software, firmware, electronic hardware descriptions of application-specific integrated circuits or ASICs, text files containing source code, software source code files including, but are not limited to files containing source code in Pascal, "C", "C++", BREW, Java ME, J2ME, assembler, digital signal processor ("DSP") programming languages, and other human readable text programming languages, include files, make files, link files, and other human-readable text files used in the generation and/or building of software directly executed on a microprocessor, micro-controller, or DSP, hardware source code files including, but not limited to files containing source code in Hardware Design Language ("HDL"), VHDL, Verilog, or other RTL language.

19.    "Person" or "persons" means an individual, corporation, proprietorship, partnership, association, or any other entity.

20.    "Entity" means any natural person, corporation, partnership, sole proprietorship, firm, board, joint venture, association, agency, authority, commission or other business entity or juristic person.

21.    "Regarding" means concerning, describing, comprising, referring to, related to, supporting, favoring, opposing, bolstering, detracting from, located in, considered in connection with, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to, connected with, commenting on, in respect of, about, in relation to, discussing, showing, describing, reflecting, analyzing constituting, and being.

22.    "Relating to" or "related to," when referring to any given subject matter, means, without limitation, any document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, refers directly or indirectly to, or is in any way relevant to the particular subject matter identified.

23.    "Communication" or "communicated" means any contact between two or more entities by which any information or knowledge is transmitted or conveyed or attempted to be transmitted or conveyed, including written contact including letters, memoranda, telegrams, telefaxes, telecopies, telexes, text messages or e-mails, and oral contact including face-to-face meetings, telephone conversations, voicemails, answering machine messages and telephonic notes.

24.    The term "identify" when used in conjunction with a person means to provide, to the extent known, the person's full name, present or last known address, and telephone number, country of residence, and country of citizenship; and when referring to a natural person,

additionally, the present or last known place of employment and, when referring to a current or former director, officer, manager or other employee of 3Shape, additionally the title(s) or position(s) held by such person, the time periods during which such person held such position(s), and a /description of the responsibilities of such person to those position(s).

25.    The term "identify," when used with respect to any legal entity, such as a corporation, company, or person other than a natural person, means that the following information shall be provided:  the entity's name; the principal place of business; and the nature of the business conducted by that legal entity.

26.    The term "identify" when used in conjunction with a document or other thing means to specify the document or thing in sufficient detail to permit Align to locate the document or thing.

27.    "Employee" means all current and former persons employed by You.

28.    "Date" means the exact day, month, and year, if ascertainable, or, if not, the best approximation thereof.

29.    "Prior Art" means all publications, patents, physical specimens, products, devices, uses, sales, offers for sale, or other activities relating to the subject matter of the Asserted Patents and existing or occurring prior to the earliest filing date of the Asserted Patents.

30.    Use of the singular is also taken to include the plural, and vice-versa.

31.    The use of the word "the" shall not be construed as limiting the scope of any request.

## **INSTRUCTIONS**

1.    You are to search all documents within Your possession, custody, or control, wherever located, including but not limited to any documents placed in storage facilities or in the