**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ALIGN TECHNOLOGY, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | C.A. No. 17-1646-LPS |
| 3SHAPE A/S, 3SHAPE TRIOS A/S, and 3SHAPE, INC., | : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| ALIGN TECHNOLOGY, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | C.A. No. 17-1647-LPS |
| 3SHAPE A/S, 3SHAPE TRIOS A/S, and 3SHAPE, INC., | : | |
| | : | |
| Defendants. | : | |

## <u>MEMORANDUM ORDER</u>

WHEREAS, Magistrate Judge Burke issued a Memorandum Order on February 3, 2020 ("Order") (C.A. No. 16-1646 D.I. 337)[1] denying the motion for a protective order (*see* D.I. 151) filed by Defendants 3Shape A/S, 3Shape Trios A/S, and 3Shape, Inc. (collectively, "Defendants" or "3Shape");

WHEREAS, on February 18, 2020, 3Shape filed objections to the Order (D.I. 394) ("Objections" or "Objs."), specifically objecting that: (i) the test applied in the Order, which

---

[1] All references to the docket index ("D.I.") are to Civil Action Number 17-1646, unless otherwise noted.

3Shape characterizes as "newly-recognized" and "novel" (*id.* at 1, 4), and the application of that test to the facts of the case, are contrary to law; and (ii) the factual determination regarding the European Patent Agent ("EPA") status of Mr. Ninn-Grønne was clearly erroneous;

WHEREAS, on February 27, 2020, Plaintiff Align Technology Inc. ("Plaintiff" or "Align") filed a response to 3Shape's Objections (D.I. 404) ("Response" or "Resp.");

WHEREAS, the Court has reviewed Judge Burke's Order under a "clearly erroneous or contrary to law" standard, *see* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a) ("FRCP 72(a)"); *see also Norguard Ins. Co. v. Serveon Inc.*, 2011 WL 344076, at *2 (D. Del. Jan. 28, 2011) ("In discovery matters, decisions of the magistrate judge are given great deference and will be reversed only for an abuse of discretion.");

WHEREAS, a magistrate judge's order "is contrary to law only when the magistrate judge has misinterpreted or misapplied the applicable law," *Evans v. John Crane, Inc.*, 2019 WL 5457101, at *6 (D. Del. Oct. 24, 2019) (internal quotation marks omitted);

WHEREAS, under the "clearly erroneous" standard, the Court will only set aside findings of a magistrate judge when it is "left with the definite and firm conviction that a mistake has been committed," *Green v. Fornario*, 486 F.3d 100, 104 (3d Cir. 2007) (internal quotation marks omitted);

NOW THEREFORE, IT IS HEREBY ORDERED that 3Shape's Objections are OVERRULED, the Order is ADOPTED, and 3Shape's motion for a protective order remains DENIED, for the following reasons:

1.     As an initial matter, the Court agrees with Align that 3Shape failed to comply with several applicable procedural rules.  First, 3Shape failed to comply with FRCP 72(a), Local Rule 72.1(b), and this Court's October 9, 2013 Standing Order for Objections Filed Under Fed.

R. Civ. P. 72 ("Standing Order"), which require that any objections to a magistrate judge's order be filed by no later than 6:00 p.m. no later than 14 days after service of the order.  Here, that means any objections to the Order were due by 6:00 p.m. on February 18, 2020, but 3Shape inexplicably did not file its Objections until 11:40 p.m. that night.  They are, thus, untimely, and can be overruled on that basis alone.  Second, 3Shape failed to comply with Local Rules 5.1.1(a) and 7.1.3(a)(2), which require that all filings must appear "in at least 12 point type," and this Court's Standing Order (¶ 7), which requires that objections "are limited to ten (10) double-spaced pages."  3Shape improperly undersized its footnotes, yet still submitted ten full pages, meaning that 3Shape submitted overlength Objections, and the Objections can be overruled on that basis as well.  Third, 3Shape failed to comply with the Standing Order's requirement that "[a]ny party filing objections . . . **must** include, along with the objections, a written statement either certifying that the objections do not raise new legal/factual arguments, or ***identifying the new arguments*** and describing the good cause for failing to previously raise the new legal/factual arguments before the Magistrate Judge."  (Standing Order at ¶ 5) (first emphasis in original, second emphasis added)  3Shape disclosed that its Objections "do raise new legal and factual arguments" (D.I. 394 at 4-5) but failed to identify them in its certification.  While the Court agrees with 3Shape that it has demonstrated "good cause" for making new arguments – as its Objections are its first opportunity to present its position on the test Judge Burke devised (*see id.*) – the Objections may be overruled on the basis of 3Shape's failure to provide a sufficient certification.  It should be neither Align's nor the Court's job to divine which arguments of 3Shape's are new.  3Shape's procedural failings, individually and especially in combination, are troubling.  *See generally Rogers v. Wilmington Trust Co.*, 2019 WL 4596650, at *2 (D. Del. Sept. 23, 2019) (adopting magistrate judge's recommendation based on objecting party's failure

to comply with written statement requirement under Standing Order, even where Court disagreed with rationale supporting recommendation).  Nevertheless, the Court will briefly address the merits of 3Shape's Objections.

2.     The Court agrees with Judge Burke that Federal Circuit law applies to the issue of whether a patent-agent privilege covers the disputed documents.  In determining "whether particular written . . . materials are discoverable in a patent case," an issue that "involves the applicability of privilege for a patentee's communications with a non-attorney patent agent" regarding matters relevant to substantive patent law, Federal Circuit law governs.  *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1290-91 (Fed. Cir. 2016).  3Shape does not appear to object to Judge Burke's decision to apply Federal Circuit law.  (*See* Objs. at 1)

3.     The Court further agrees with Judge Burke that the Federal Circuit, if faced with the question before this Court, would start with its decision in *In re Queen's*.  There the Federal Circuit "recognize[d] a patent-agent privilege extending to communications with non-attorney patent agents when those agents are acting within the agent's authorized practice of law before the [USPTO]."  820 F.3d at 1302.  In *In re Queen's*, the patent agent under consideration was based in Canada and registered to practice before the USPTO; here, by contrast, none of the EPAs or non-attorney patent agents is authorized to practice before the USPTO.  (*See* Order at 15 n.10) ("[N]one of the disputed documents relate to a patent agent's work amounting to the authorized practice of law before the USPTO (i.e., communications reasonably necessary and incident to authorized patent prosecution before the USPTO).")  The Court agrees with Judge Burke that the Federal Circuit would not hold that the individuals under consideration here cannot enjoy any privilege – simply because they are not authorized to practice before the USPTO – and further agrees that the Federal Circuit would modify its *In re Queen's* test to

4

capture the present circumstances.  In particular, the Court is persuaded that the Federal Circuit

would apply precisely the reformulated test articulated by Judge Burke: "a patent-agent privilege

could serve to shield certain communications between registered foreign patent agents and their

clients from disclosure, if the party seeking protection could show either that: (1) the

communications at issue were made to or by patent agents acting within the scope of the

'authorized practice of law' set out by the law of the foreign country (or by the regulations of a[]

governmental entity similar to the USPTO); or (2) the law of the foreign country at issue

otherwise recognizes a patent-agent privilege that is broader than or otherwise in conflict with

that recognized by United States courts, and the foreign communications at issue fall within the

scope of that privilege."  (Order at 17; *see also In re Queen's*, 820 F.3d at 1302)  3Shape has

failed to demonstrate that this test is "contrary to law."

      4.      3Shape argues that Judge Burke's application of the first prong of the test

articulated in the Order – whether the communications at issue were made to or by patent agents

acting within the scope of the authorized practice of law set out by the law of the foreign country

(or by the regulations of a governmental entity similar to the USPTO) – is contrary to law

because he did distinguish between registered EPAs and non-EPA Danish patent agents.  (Objs.

at 6)  3Shape contends that both groups are authorized to provide patent counseling in Denmark,

but that because "the parties' arguments and evidence were primarily directed to registered

EPAs," Judge Burke "limited his analysis to registered EPAs," and the Order should be

"modified or set aside to recognize privilege for both registered EPAs and non-EPA patent

advisors in connection with communications concerning authorized patent counseling under the

first part" of the test.  (*Id.* at 5-6, 8)  These are not meritorious grounds to reject or modify the

Order.  As Align observes, 3Shape conceded that non-EPA patent agents are not within the scope

of privilege recognized by Danish law, and even withdrew certain privilege claims on this basis. (*See* July 22, 2019 Hr'g Tr. (D.I. 223) at 63-65; *see also* D.I. 208 at 2 n.3; D.I. 404 at 5)  Further, 3Shape's contention – even if correct – would not lead to any relief, as 3Shape has not argued that the result of the application of the test would be any different if there were a distinction between EPAs and non-EPA patent agents.  As Align correctly states: "Whether the Court analyzes EPA and non-EPA patent agents separately or jointly, 3Shape has failed to prove that the communications at issue are within the scope of a non-attorney patent agent's legally authorized practice and, therefore, that any recognizable privilege applies."  (Resp. at 6)

5.      Turning to application of the second prong of the test, 3Shape argues that Judge Burke improperly "relied upon Mr. Vittrup's opening declaration to find that 3Shape had not established that Danish law provides for a privilege that is broader in scope or in conflict with the privilege set out in *In re Queen's* and that covers the disputed documents" (Objs. at 8-9), and that he abused his discretion by "fail[ing] to give proper weight to Mr. Ninn-Grønne's declaration and testimony, and completely disregard[ing] internal Danish Ministry of Justice documents, which corroborated his testimony" (*id.* at 9).  In support of its argument, 3Shape submitted new evidence not before Judge Burke.  (*See, e.g.*, *id.* Ex. 17 at ¶¶ 4-28, Ex. F[2]) Contrary to 3Shape's view, it is evident that Judge Burke relied on more than just Mr. Vittrup's opening declaration and considered all evidence submitted, including a supplemental declaration from Mr. Vittrup (expressly cited in Order at 21 n.14), Mr. Ninn-Grønne's declaration (*see id.* at

---

[2] In yet another instance of non-compliance with applicable rules, 3Shape has failed to provide a certified English translation of Exhibit F to Exhibit 17 (Mr. Vittrup's February Supplemental Declaration), as required by Local Rule 7.1.3(d).  While the declaration itself states that Exhibit F is "attached in its original Danish with a certified English translation" (D.I. 394 Ex. 17 at ¶ 6), the document is actually in English – not Danish – and includes no certification.

21-22), and Mr. Ninn-Grønne's testimony (*see id.* at 22).  The Order also expressly notes "[t]o the extent the Court has not referenced a document submitted by Defendants, that is because the Court did not believe that the document was particularly relevant to or helpful to the analysis it has undertaken."  (*Id.* at 18 n.13)  Even considering the newest declaration from Mr. Vittrup – which at most shows that EPAs (and perhaps also non-EPA agents) regularly perform work beyond that solely relating to patent prosecution – there is nothing clearly erroneous (or in any respect wrong) about Judge Burke's conclusion that 3Shape has failed to show a Danish privilege law that is broader or otherwise in conflict with the privilege set out in *In re Queen's* and that covers the disputed documents.  3Shape's burden is to show what practices are deemed privileged under Danish ***law***; its evidence of what ***practices*** EPAs and non-EPAs actually undertake does not meet this burden.  (*See* Order at 21 (explaining that declarations do not "demonstrate the extent to which the ***law of Denmark authorizes*** EPAs to take certain actions that amount to the practice of law, or whether Danish law otherwise recognizes a patent-agent privilege broader than or in conflict with that set out in U.S. law") (emphasis added; internal footnote omitted); *see also id.* at 20 ("[I]t does not sufficiently demonstrate exactly how it is, pursuant to Danish law, that EPAs in Denmark have been legally authorized to perform a 'broader legal role' than USPTO-registered patent agents."))  Align is again correct when it observes that 3Shape "identifies no case, statute, or other legal authority establishing that Danish patent agents are legally authorized to engage in infringement, validity, or freedom-to-operate analysis."  (Resp. at 6)

6.     Finally, Judge Burke did not clearly err in finding that Mr. Ninn-Grønne did not appear on the list referred to in Article 134 during the relevant time frame (2011 to 2017).  (Objs. at 9-10)  The Order correctly states that, "look[ing] to the ***entire record,***" and not just a single

ITC document, "the Court does not have evidence indicating that [Mr. Ninn-Grønne] was on the list referred to in Article 134 *as of the dates when the disputed documents were created*." (Order at 18, 20) (emphasis added)  Even if the Court were to consider 3Shape's new evidence, and even if it were to find that Mr. Ninn-Grønne was on the Article 134 list on the pertinent dates, this would not lead to any relief for 3Shape as it has failed to show any error in the Order's articulation or application of its test to EPAs under Danish law (for the reasons explained above).

7.      To the extent that 3Shape generally "objects to additional parts of the Order that are contrary to law and/or clearly erroneous" (D.I. 394 at 4), such a generalized statement is "insufficient to preserve [3Shape's] right to further review" and fails to comply with applicable procedural rules.  *Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 375-76 (D. Del. 2014) (generalized objections insufficient to preserve right to further review by District Court where objecting party failed to identify issue on which it was objecting or basis for its objections).

IT IS FURTHER ORDERED that 3Shape shall promptly comply with the Order and the instant Order and produce the disputed materials to Align as soon as possible.  The parties shall meet and confer and should they have any dispute as to the timing of such production they shall file a joint status report, containing their competing proposals, no later than April 17, 2020.

April 15, 2020                                    HONORABLE LEONARD P. STARK
Wilmington, Delaware                        UNITED STATES DISTRICT JUDGE