# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALIGN TECHNOLOGY, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 17-1646-LPS |
| | : | **UNSEALED ON** |
| 3SHAPE A/S, 3SHAPE TRIOS A/S, and | : | **AUGUST 19, 2020** |
| 3SHAPE, INC., | : | |
| | : | |
| Defendants. | : | |

John W. Shaw, Karen E. Keller, Jeff Castellano, SHAW KELLER LLP, Wilmington, DE
Blair M. Jacobs, Christina A. Ondrick, Elizabeth Bernard, John S. Holley, Mark Consilvio, Allan M. Soobert, PAUL HASTINGS LLP, Washington, DC
Thomas A. Counts, Grant Margeson, PAUL HASTINGS LLP, San Francisco, CA
Rebecca Weinstein Bacon, Reid M. Bolton, Mark L. Levine, Anastasiya Maione, Steven E. Derringer, William D. Grohl, Michael J. Valaik, BARTLIT BECK LLP, Chicago, IL
Daniel C. Taylor, John M. Hughes, Joseph C. Smith, Jr., Sundeep K. Addy, Katherine L.I. Hacker, BARTLIT BECK LLP, Denver CO
Michael A. Jacobs, Richard S.J. Hung, Arturo J. Gonzalez, Shaelyn K. Dawson, MORRISON & FOERSTER LLP, San Francisco, CA

     Attorneys for Plaintiff

James H.S. Levine, Joanna J. Cline, TROUTMAN PEPPER HAMILTON SANDERS LLP, Wilmington, DE
Goutam Patnaik, David J. Shaw, Tuhin Ganguly, Kimberly Coghill, Bryan J. Cannon, TROUTMAN PEPPER HAMILTON SANDERS LLP, Washington, DC
William Belanger, Gregory Len, Brittanee L. Petrik, TROUTMAN PEPPER HAMILTON SANDERS LLP, Boston, MA
S. Lloyd Smith, Bryan J. Cannon, Laura K. Pitts, BUCHANAN INGERSOLL & ROONEY PC, Alexandria, VA

     Attorneys for Defendants

## MEMORANDUM OPINION

August 14, 2020
Wilmington, Delaware

**STARK, U.S. District Judge:**

Plaintiff Align Technology, Inc. ("Plaintiff" or "Align") filed suit against Defendants 3Shape A/S and 3Shape, Inc. ("Defendants" or "3Shape") on November 14, 2017, alleging infringement of U.S. Patent Nos. 7,112,065 (the "'065 Patent"), 9,510,757 (the "'757 Patent"), 9,299,192 (the "'192 Patent"), 8,845,330 (the "'330 Patent"), 8,454,364 (the "'364 Patent"), and 9,427,916 (the "'916 Patent"). (D.I. 1) The patents-in-suit relate to various aspects of intraoral scanning.

Pending before the Court are 3Shape's *Daubert* motion (D.I. 311), Align's *Daubert* motion (D.I. 316), several summary judgment motions filed by 3Shape (D.I. 299, 302, 304, 306, 309), and a partial summary judgment motion filed by Align (D.I. 313). The Court heard argument on these motions on May 8, 2020. (*See* D.I. 442) ("Tr.")

# I.     LEGAL STANDARDS

## A.     Daubert and Federal Rule of Evidence 702

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court explained that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." The rule requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert testimony is admissible only if "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). There are three distinct requirements for admissible expert testimony: (1) the expert must be qualified; (2) the opinion must be reliable; and (3) the expert's opinion must relate to the facts. *See generally Elcock v. Kmart Corp.*, 233 F.3d 734, 741-46 (3d Cir. 2000). Rule 702 embodies a "liberal policy of admissibility." *Pineda*

1

*v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008). Motions to exclude evidence are committed to the Court's discretion. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir. 1994).

## B.    Summary Judgment and Rule of Civil Procedure 56

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks and emphasis omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir.2005) (stating

party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

When an accused infringer moves for summary judgment of non-infringement, such relief may be granted only if one or more limitations of the claim in question does not read on an element of the accused product, either literally or under the doctrine of equivalents. *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005); *see also TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002) ("Summary judgment of noninfringement is . . . appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial."). Thus, summary judgment of non-infringement can only be granted if, after viewing the facts in the light most favorable to the non-movant, there is no genuine issue as to whether the accused

3

product is covered by the claims (as construed by the Court). *See Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

## II.    DISCUSSION

### A.    Daubert Motions

#### 1.    3Shape's Daubert Motions

##### a.    Dr. Ricupito

3Shape seeks to exclude testimony of Align's expert, Dr. Ricupito, relating to the state of digital dentistry and its benefits and limitations. 3Shape argues Dr. Ricupito's opinions should be excluded as speculative, failing to account for the subject matter and digital dentistry methods disclosed in the '330 patent, and failing to meet the requirements of reliability and fit because they do not specify a relevant timeframe. (D.I. 312 at 2, 4-5) 3Shape further contends that Dr. Ricupito's opinions that physical models were still needed in certain circumstances – because "practitioners [could not] work with digital only models" (D.I. 319 Ex. 29 ¶ 16), and that "the introduction of digital dentistry, including intraoral scanning technology, introduced a technological problem in need of a solution: namely, how to convert the now digital only models back into physical models with the appropriate alignment between the upper and lower jaw models" (D.I. 319 Ex. 29 ¶ 16) – are unreliable and fail to fit the facts of the case because Dr. Ricupito failed to consider the existing solutions to the technological problem in the art. (*See* D.I. 312 at 4-5; *see also* D.I. 319 Ex. 2 at 3:53-60, 4:49-56; D.I. 319 Ex. 31 at 2:13-17)

Align responds that Dr. Ricupito's declaration sets forth the relevant timeframe for his opinions, and his deposition testimony was consistent with that timeframe. (D.I. 342 at 1, 3; *see also* D.I. 339 Ex. 1 ¶ 1 ("Align asked me to provide my expert opinion with regard to certain dental and orthodontic practices in the field of dentistry prior to the year 2002."); D.I. 339 Ex. 2

at 37 (reiterating timeframe is "prior to the year 2002"); *id.* at 64 (same))  Align responds to 3Shape's arguments about Dr. Ricupito's opinions on the technological solution presented by the asserted patents as being mere attorney argument and misunderstanding the description in the '330 patent itself.  (D.I. 342 at 3-4; *see also* D.I. 319 Ex. 2 at 4:52-56 (differentiating invention from WO 98/52493))

3Shape's arguments in reply focus on Dr. Ricupito's purported lack of qualifications to provide reliable opinions that fit the facts of the case.  (*See* D.I. 365 at 1-2) ("Dr. Ricupito opines regarding the 'field of digital dentistry,' to which he indicated that he was not introduced until 'the 2000s.' . . . In fact, Dr. Ricupito admitted that he 'didn't have any experience with digital dentistry before 2002,' the critical date of the patents.")

The Court will deny 3Shape's motion.  Its contentions provide no meritorious basis for exclusion of Dr. Ricupito's opinions.  Instead, 3Shape's arguments go to the weight that may be accorded to the challenged opinions, not their admissibility.  *See Daubert*, 509 U.S. at 596.

### b.    Mr. Bakewell

3Shape seeks to exclude testimony of Align's damages expert, Mr. Bakewell, concerning the '757 patent.  (D.I. 312 at 2-3, 5-8)  Specifically, 3Shape argues that Mr. Bakewell (i) improperly relies on Dr. Ricupito's opinions; (ii) in valuing the allegedly infringing product (TRIOS Patient Monitoring ("TPM")), includes non-infringing features and fails to apportion the value of the asserted claims; and (iii) relies on a speculative theory of increased orthodontist sales of additional NightGuards due to use of the TPM and Align's analogous product TimeLapse.  (*Id.* at 2-3)  Thus, according to 3Shape, Mr. Bakewell's NightGuard Theory (which purportedly ignores the value of the TPM software) opinions are unreliable, not based on a recognized method for calculating damages, and do not fit the facts of the case.  (*Id.* at 2-3)

5

Align counters that Mr. Bakewell developed a royalty rate by reliably applying financial and economic principles to the facts of the case, and by analyzing "the hypothetical negotiation framed by the *Georgia-Pacific* factors, ordinary course documents that evidence how Align values the benefits driven by the asserted patents, opinions of experts, Align witnesses, and 3Shape's documents and testimony." (D.I. 342 at 1-2)  With respect to apportionment, Align contends that Mr. Bakewell properly determined the incremental value of the '757 patent through an analysis of the value specifically attributable to it, based on record evidence and interviews with two experts. (D.I. 342 at 5-8; *see also* D.I. 319 Ex. 16 ¶¶ 146-85)  Align contends that Mr. Bakewell properly relied on opinions of Dr. Badler and Dr. Ricupito, as well as testimony from 3Shape's employees, to link additional sales of NightGuards to the patented technology, including how the accused comparison features enable doctors to sell additional custom NightGuards by engaging patients in treatment plans. (D.I. 342 at 9; *see also* D.I. 319 Ex. 16 ¶¶ 146-85)

The Court agrees with Align that Mr. Bakewell's methodology is sufficiently sound to survive a *Daubert* challenge.[1]  Mr. Bakewell has sufficiently explained and tied to the facts of this case his royalty rate analysis, including by consideration of the *Georgia-Pacific* factors, and his royalty rate analysis properly accounts for the incremental value of the patented features (including additional sales of NightGuards). (D.I. 319 Ex. 16 ¶¶ 146-85)  There is nothing improper in Mr. Bakewell's reliance here on other materials, including opinions of other experts, testimony from Align witnesses, and ordinary course documents.  The Court will deny this portion of Align's motion.

---

[1] 3Shape's own damages expert appears to have used the same methodology in his analysis. (*See, e.g.*, D.I. 318 Ex. 1 at 32 (Mr. Green "[u]sing the methodology employed in the Bakewell Report"); *id.* at 36 (same))

### c.    Dr. Stevenson

3Shape seeks exclusion of Dr. Stevenson's opinions that the '330, '364, and '916 patents are patent-eligible. (D.I. 312 at 9-10)  In particular, 3Shape targets Dr. Stevenson's "opinions relating to improvements in dentistry or digital dentistry allegedly provided by the asserted claims" of these patents. (D.I. 312 at 9)  3Shape argues that Dr. Stevenson's opinions related to subject-matter eligibility improperly constitute legal conclusions and invade the province of the Court. (*See id.*; *see also* D.I. 319 Ex. 9 ¶¶ 62, 156, 169, 185)  3Shape also faults Dr. Stevenson's reliance on opinions of Dr. Ricupito that 3Shape tries (but fails) to exclude and for failing to assess the distinctions between digital and analog models of dental structures at the pertinent date. (D.I. 312 at 10; *see also* D.I. 319 Ex. 10 at 121-30, 142-48)

Align responds that Dr. Stevenson's opinions – that the invention of the model creator patents involved more than performance of routine and conventional activities – are not legal conclusions but instead address factual questions pertinent to patent eligibility at step 2 of the *Alice* test. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) ("The second step of the *Alice* test is satisfied when the claim limitations 'involve more than performance of 'well-understood, routine, [and] conventional activities.'").  Align also points out that Dr. Stevenson's challenged opinions directly respond to those of 3Shape's technical expert, Dr. Egbert. (D.I. 342 at 11)  With respect to qualifications and reliability, Align argues that Dr. Stevenson's opinions are within his field of expertise – 3D modelling – and properly rely on Dr. Ricupito's opinions as an orthodontist, as corroborated by record evidence. (*Id.* at 11-12; *see also* D.I. 319 Ex. 9 ¶¶ 156-57)

The Court need not address the merits of 3Shape's attacks on the Dr. Stevenson's Section 101 opinions because the Court is determining, in connection with another motion discussed

elsewhere in this Memorandum Opinion, that the patents 3Shape challenges are directed to patent-eligible subject matter. The Court agrees with Align that 3Shape's remaining arguments, which relate to the materials on which Dr. Stevenson relies as support for his opinions, go to the weight to be accorded to his opinions, not their admissibility. (*See, e.g.*, D.I. 319 Ex. 9 ¶¶ 156-57) The Court will deny 3Shape's motion.

### 2. Align's Daubert Motions

#### a. Mr. Green

Align seeks to exclude Mr. Green's testimony on two grounds: (i) his technical opinions – which relate to the scope of the technology, the accused or unaccused features, and/or the novelty of the patented technology – are unsupported; and (ii) his opinions regarding a license agreement are unreliable because he has not determined that the license agreement is comparable to the hypothetical license. (D.I. 317 at 4-5; *see also* D.I. 318 Ex. 2 at 43-44, 47-48, 180 (Green deposition testimony)) The license agreement at issue (the "Malocclusion License") is between Align and one of its subsidiaries, Malocclusion C.V. (D.I. 318 Ex. 3)

3Shape responds that (i) the "technical" opinions Align seeks to exclude are not in fact technical opinions; and (ii) Mr. Green does not use the Malocclusion License as the basis for any royalty opinions or damages calculations, but rather to rebut Mr. Bakewell's analysis, so he need not prove it would be sufficiently comparable to form the basis for a royalty opinion. (D.I. 345 at 1, 5-6; *see also* D.I. 348 Ex. 10 at 28 ("I note that the effective royalty rates claimed by the Bakewell Report are 5.6 to 12.5 times the 4.8% royalty rate from Align's license agreement with Malocclusion C.V., in which Align licensed its patent portfolio, trademarks, and other intangible assets."))

The Court will deny Align's motion.  The Court agrees with 3Shape that Mr. Green's "technical" opinions are not improper technical opinions but, instead, proper criticisms of Mr. Bakewell's reasonable royalty analysis.  Nor is there anything improper in Mr. Green's use of the Malocclusion License to critique Mr. Bakewell's damages analysis, including Mr. Bakewell's opinion that "there are no comparable licenses."  (D.I. 345 Ex. 12 at 84; *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009))  Align's arguments regarding the non-comparability of the Malocclusion License to the hypothetical license may be raised on cross-examination but do not warrant exclusion of Mr. Green's opinions.  *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) ( "The degree of comparability of [the] license agreements as well as any failure on the part of [the] expert to control for certain variables are factual issues best addressed by cross examination and not by exclusion.")

### b.      Dr. Egbert

Align seeks to exclude certain of Dr. Egbert's opinions relating to the '330, '364, and '916 patents.

### i.      Claim Construction: "Couples Together With"

Align challenges Dr. Egbert's opinions regarding invalidity and non-infringement of the '330 and '364 patents, arguing they are based on an erroneous construction of the claim term "couples together with," which appears in all independent claims of both patents.  (D.I. 317 at 8-13; *see also, e.g.*, D.I. 1 Ex. 7 at 8:49-59)  Neither party sought construction of this term at the claim construction stage.  (*See* D.I. 75, 81, 83)  Dr. Egbert's opinion is essentially that the independent claims of the '330 and '364 patents do not cover the embodiment shown in Figure 3 of these patents, as, based on his analysis of the prosecution history, "Applicant subsequently narrowed the independent claims during prosecution to overcome prior art rejections in such a

manner that the independent claims no longer encompass the FIG. 3 embodiment (i.e., to only be directed to the FIG. 4 embodiment)." (D.I. 318 Ex. 7 ¶ 43; *see also, e.g.*, *id.* Ex. 8 ¶¶ 32, 35; *id.* Ex. 9 ¶¶ 28, 42; *id.* Ex. 10 at 215-18) He further opines that to construe the claims as Align does, to include the embodiment of Figure 3, renders the claims invalid under § 112. (D.I. 318 Ex. 7 ¶¶ 85-94) Align contends that Dr. Egbert's analysis should be excluded because it improperly imports limitations into the claims, rendering his opinions unreliable. (D.I. 317 at 9-11)

3Shape responds that Dr. Egbert is merely applying the plain and ordinary meaning of the claim term, in light of his understanding of the intrinsic evidence. (D.I. 345 at 6-8; *see also* D.I. 348 Ex. 13 ¶ 43 ("The embodiment of FIG. 3 does not include 'a first structure of the upper jaw that couples together with a second structure of the lower jaw' within the plain and ordinary meaning of this phrase.") (emphasis omitted)) 3Shape also contends (*see* D.I. 345 at 8-9) that certain of the paragraphs cited by Align merely discuss background of the prosecution history (*see* D.I. 318 Ex. 8 ¶¶ 20, 26, 30, 32; *id.* Ex. 9 ¶¶ 24-27), the doctrine of equivalents ("DOE") generally (*see* D.I. 318 Ex. 8 ¶¶ 68-70), and criticisms of Align's expert, Dr. Stevenson, relating to prosecution history estoppel (*see, e.g.*, D.I. 348 Ex. 1 ¶¶ 97, 102). Finally, 3Shape argues (D.I. 345 at 9) that Dr. Egbert's invalidity opinions regarding § 112 (*see* D.I. 318 Ex. 7 ¶¶ 85-94; *id.* Ex. 9 ¶¶ 37-38) are proper because Dr. Egbert applies Align's proposed interpretations of the claim term.

The Court agrees with Align that Dr. Egbert adopts a construction of the claim term "couples together with" that narrows the claim scope from the plain and ordinary meaning, and then applies that construction throughout his invalidity and non-infringement analyses. (*See, e.g.*, D.I. 318 Ex. 7 ¶ 43; *id.* Ex. 8 ¶¶ 32, 35; *id.* Ex. 9 ¶¶ 28, 42; *id.* Ex. 10 at 215-18) Despite

Dr. Egbert's statement purporting to apply the plain and ordinary meaning of "couples together with" (D.I. 318 Ex. 7 ¶ 43), in the very next sentence of his report Dr. Egbert makes clear he is applying his own claim construction: "In other words, it is my opinion that the Applicant originally presented claims that were directed to both embodiments, but the Applicant subsequently narrowed the independent claims during prosecution to overcome prior art rejections in such a manner that the independent claims no longer encompass the FIG. 3 embodiment (*i.e.*, to only be directed to the FIG. 4 embodiment)" (*id.*; *see also* D.I. 318 Ex. 9 ¶ 28 ("The Patent Applicant clearly disavowed such claim scope in amending the independent claims to overcome the prior art.")). Dr. Egbert's opinions construing the claim term and applying his construction will be stricken. *See generally Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1342-43 (Fed. Cir. 2015) ("Whether their statements or disclaimers impact the meaning of a claim term in a given patent is a legal question, not a factual one.").

However (and as further explained in connection with DOE below), the Court is not persuaded it must strike Dr. Egbert's opinions regarding prosecution history estoppel and DOE. Further, the Court agrees with 3Shape that Dr. Egbert's § 112 opinions apply Align's interpretation of the claim term, and thus are not impacted by his flawed claim construction. Therefore, the Court will not strike these opinions.

Accordingly, the Court will grant in part and deny in part this portion of Align's motion.

### ii.     Sections 101 and 103

Align seeks to exclude Dr. Egbert's Section 101 and 103 invalidity opinions relating to the '330, '364, and '916 patents, based on his purported lack of qualifications. (*See* D.I. 317 at 13-17) Align contends that Dr. Egbert's § 101 ineligibility opinions "undeniably require[] knowledge that Dr. Egbert does not possess," as he "is simply not capable of or qualified to

provide testimony or opinions about dental practices or restorative dental care applications, including conventional and prior art analog dental practices, outside of computer modeling." (D.I. 317 at 13-14; *see also* D.I. 318 Ex. 7 ¶¶ 99-108; *id.* Ex. 10 at 33-39) Align challenges Dr. Egbert's § 103 opinions because he relies on analog dental practices with which he is not experienced and which are outside the field of one of ordinary skill in the art. (D.I. 317 at 16; *see also* D.I. 318 Ex. 7 ¶¶ 114-45, 179-269, 292-94, 325-30, 352-55, 380-487; *id.* Ex. 9 ¶¶ 55-75)

3Shape argues in response that Dr. Egbert, as an expert in the field of computer science and 3D computer modelling, qualifies under the parties' agreed-upon definition as a person of ordinary skill in the art ("POSA"), and, thus, is qualified to offer his invalidity (and non-infringement opinions), irrespective of whether he has any specific expertise in the field of dentistry. (D.I. 345 at 10-12; *see also* D.I. 348 Ex. 13 ¶ 71 (defining POSA)) 3Shape argues that Dr. Egbert's § 103 opinions are proper because they are within his field of expertise, regardless of the fact that the physical objects described in the prior art relate to dentistry. (D.I. 345 at 14-15)

Align's motion as it relates to § 101 is moot because the Court is resolving the subject matter eligibility issue as a matter of law, as is further described below (in connection with 3Shape's motion for summary judgment). Dr. Egbert's testimony relating to § 103 survives the *Daubert* challenge. He is an expert in the field in which 3Shape intends to offer his testimony, and his opinions are properly supported. (*See, e.g.*, D.I. 345 at 14) ("[C]onsideration of dentistry-related information (*e.g.*, the background information provided in the '330, '364 and '916 patents themselves) or the Declaration of Dr. Feit to inform his understanding of the background of relevant dental processes does not preclude him from offering opinions relating to

his own field of expertise.") Align's criticisms go to the weight and not admissibility of Dr. Egbert's opinions. Thus, the Court will deny this portion of Align's motion.

### iii.    Doctrine of equivalents

Align seeks to exclude Dr. Egbert's rebuttal report opinions relating to the '330, '364, and '916 patents, in particular that (i) Align failed to rebut the presumption of surrender regarding prosecution history estoppel and DOE, and (ii) there is no infringement under the DOE. (D.I. 317 at 17-18; *see also* D.I. 318 Ex. 8 ¶¶ 69-70, 97-98, 102-03, 123, 171; D.I. 348 Ex. 1 ¶ 132) Pointing to Federal Circuit case law, Align argues that whether a presumption has been rebutted is an issue of law, and thus Dr. Egbert's opinions invade the exclusive province of the Court. (D.I. 317 at 17) Align also argues that Dr. Egbert's opinions regarding non-infringement under the DOE "are conclusory, misrepresent Dr. Stevenson's opinions and should be excluded as unreliable and impermissible legal conclusions." (D.I. 317 at 18)

3Shape responds that Dr. Egbert does not offer a legal opinion regarding prosecution history estoppel but rather provides context to rebut Dr. Stevenson's conclusions relating to application of the DOE. (D.I. 345 at 15-16; D.I. 348 Ex. 1 at ¶¶ 68, 97, 102; D.I. 348 Ex. 1 ¶ 132) 3Shape points out that Align had a full opportunity to depose Dr. Egbert regarding these opinions. (D.I. 345 at 18)

The Court lacks a sufficient basis to exclude Dr. Egbert's DOE opinions, which properly rebut those of Dr. Stevenson. Align's arguments are better suited for cross-examination at trial than a *Daubert* motion. Thus, the Court will deny this portion of Align's motion.

### c.    Dr. Saber

Align seeks to exclude certain invalidity and non-infringement opinions from 3Shape's technical expert, Dr. Saber, regarding the '757 patent, on several grounds, discussed below. (D.I. 317 at 18)

### i.    Claim construction

Align contends that Dr. Saber construes claim terms for which no construction was sought and re-construes claim terms inconsistent with the Court's constructions. (D.I. 317 at 18-24)

First, with respect to claim 13, Align seeks to strike paragraphs 76-78 and 88-89 of Dr. Saber's non-infringement report based on untimeliness, and because the opinions expressed are based on the premise that the multiple steps of the claim must be performed in a specific order – contrary to the Court's construction. (D.I. 317 at 19-20; *see also* D.I. 178; D.I. 318 Ex. 14 ¶¶ 76-78, 88-89) Rather than address the merits of Align's motion, 3Shape directs the Court to its motion for summary judgment of non-infringement of the '757 patent, noting "[t]he Court's resolution of [that motion] will resolve this challenge to exclude Dr. Saber's testimony." (D.I. 345 at 18; *see also* D.I. 301 at 8-10) For reasons discussed below, the Court will deny 3Shape's summary judgment motion on this ground and, similarly, will grant this portion of Align's *Daubert* motion, precluding Dr. Saber's opinions based on a claim construction requiring that the steps of claim 13 be performed in a specific order.

Next, Align seeks to exclude paragraph 58 of Dr. Saber's opening report, in which Align contends that he limits the claim term "an indication of the intraoral area of interest" – which the Court has held requires no construction (D.I. 178) – to mean a "flaw" or "anomaly" in scan data. (D.I. 317 at 20-21; *see also* D.I. 318 Ex. 12 ¶ 58) 3Shape responds that Dr. Saber's opinion is

14

based on the plain and ordinary meaning of the claim term, and accepts that the term is open-ended. (D.I. 345 at 18-19; *see also* D.I. 318 Ex. 12 ¶ 58 ("[T]he claims call for inspecting a scan to identify areas of an anomaly in scan data (*e.g., a hole, a change, etc.*) and call attention thereto – which I would consider to be an abstract concept.") (emphasis added))  The Court does not find this portion of Dr. Saber's analysis to be inconsistent with the Court's claim construction and so will not exclude it.  Dr. Saber's use of the words "flaw" and "anomaly" do not mean he is opining that the claim term is limited *only* to a "flaw" or an "anomaly."

At claim construction, the Court construed the term "voxel" to mean "volume pixel; the 3D equivalent of a pixel." (D.I. 178)  Align now seeks to exclude paragraphs 58-61 and 69 of Dr. Saber's non-infringement report based on Dr. Saber's purported redefinition and narrowing of the term to exclude "vertex," based on testimony of 3Shape engineers. (D.I. 317 at 21-22; *see also* D.I. 318 Ex. 14 ¶¶ 58-61, 69)  In the alternative, Align requests that the Court expressly clarify its prior claim construction ruling and order that "voxel" does not exclude a vertex. (D.I. 317 at 23)  The Court agrees with Align that Dr. Saber improperly construes voxel to exclude a vertex[2] and his opinions based on his incorrect construction should be excluded.  Thus, the Court will grant this portion of Align's motion.

Align seeks to exclude Dr. Saber's opinions at paragraphs 51-52 and 111-12 of his opening report, and paragraphs 95-109 of his rebuttal report, which Align argues contradict the Court's ruling that the claim term "an indication of the intraoral area of interest . . . wherein the intraoral area of interest is hidden" should be construed according to its plain and ordinary meaning. (D.I. 317 at 23; *see also* D.I. 178; D.I. 318 Ex. 12 ¶¶ 51-52, 111-12; *id.* Ex. 14 ¶¶ 98-

_____

[2] For example, Dr. Saber opines in his rebuttal report that a "vertex" does not have a volume and, therefore, is not a volume pixel; he testified to this same opinion at his deposition. (D.I. 345 at 20; *see also* D.I. 318 Ex. 14 ¶ 60; D.I. 348 Ex. 15 at 137-38, 192, 194, 201, 229))

109) According to Align, Dr. Saber improperly narrows the term by opining that it "requires the claimed indication identify the area of interest's: (1) existence and (2) location when the area is hidden from view." (D.I. 317 at 23; *see also* D.I. 318 Ex. 12 ¶ 52)  In Align's view, Dr. Saber goes on to redefine "the intraoral area of interest is hidden" to require that "the entire intraoral area of interest and not just a portion of the intraoral area of interest" is hidden. (D.I. 317 at 23; *see also* D.I. 318 Ex. 14 ¶ 106; *id.* Ex. 12 ¶ 51)  To Align, this is contrary to the specification, which, combined with the claim language itself, shows that the term encompasses both partially hidden areas of interest and completely hidden areas of interest. (D.I. 317 at 23-24; *see also* D.I. 1 Ex. 1 at 25:22-32, 25:43-55)[3]

Regarding the "hidden" requirement, 3Shape responds that Dr. Saber's opinion is supported by the specification, which explains the meaning of "hidden" and contrasts it with "occluded," and the language of claim 13. (D.I. 345 at 24; *see also* D.I. 1 Ex. 1 at 3:9-13, 14:26-27, 15:26-28)  Regarding the "indication" requirement, 3Shape responds that Dr. Saber's opinions are based on his understanding of the plain and ordinary meaning of "indication" in the context of the patent, which is consistent with – and even quotes – the Court's claim construction opinion. (D.I. 345 at 22-23; *see also* D.I. 318 Ex. 12 ¶¶ 51-52; D.I. 177 at 6-7)

The Court agrees with Align that Dr. Saber improperly narrows the Court's construction of this claim term and applies that narrowed construction in his analysis. Despite Dr. Saber's citations to the Court's claim construction opinion, Dr. Saber goes beyond the Court's construction and excludes intraoral areas of interest that are partially hidden (as opposed to

---

[3] Align also contends that Dr. Saber's interpretation requires the claim to have a flag or other visible indication. (*See* D.I. 317 at 23-24; *see also* D.I. 1 Ex. 1 at 25:27-32, cl. 13)  But Dr. Saber clearly stated in his deposition that while a "flag" is an example of an indication, it is not required. (*See* D.I. 348 Ex. 16 at 189-90)

completely hidden). (*See, e.g.*, D.I. 318 Ex. 12 ¶ 51) The Court did not read such a limitation into the claims at claim construction (*see* D.I. 177 at 5-7) , and it declines to do so here. The specification supports the Court's view of the claims, as it distinguishes between areas of interest that are "largely occluded" and those that are "completely hidden." (D.I. 1 Ex. 1 at 25:27-32) Therefore, this portion of Align's motion will be granted.

### ii.    DOE

Align seeks to exclude Dr. Saber's testimony rebutting Dr. Badler's DOE opinions on the basis that they amount to conclusory legal opinions, as Dr. Saber neither performed the function-way-result test for independent claim 13, nor opined whether the function, way, or result identified by Dr. Badler for each claim elements is satisfied. (D.I. 317 at 24-25; *see also* D.I. 318 Ex. 14 ¶¶ 53, 54, 72-74, 83-86, 92-94, 107-09) For dependent claims 15-17, Align argues that Dr. Saber's opinions merely state legal conclusions, lacking any DOE analysis or supporting evidence at all. (D.I. 317 at 25; *see also* D.I. 318 Ex. 14 ¶¶ 110-12) Finally, Align argues that Dr. Saber's opinion that Dr. Badler's DOE opinions are "conclusory and "insufficient to meet [Align's] burden" also should be excluded because they are merely legal conclusions without supporting facts or analysis. (D.I. 317 at 25; D.I. 318 Ex. 14 ¶¶ 73, 85, 93)

3Shape responds that Dr. Saber's opinions rebutting Dr. Badler's DOE opinions are not legal conclusions but, rather, proper rebuttal testimony. (D.I. 345 at 26) "'A rebuttal or reply expert report is proper if the intent of the report is solely to contradict or rebut evidence on the same subject matter identified by the opposing party's expert report.'" (*Id.*) (quoting *Withrow v. Spears*, 967 F. Supp. 2d 982, 1001 (D. Del. 2013))

The Court agrees with 3Shape that Dr. Saber's opinions rebutting Dr. Badler's DOE opinions constitute proper rebuttal testimony. (*See, e.g.*, D.I. 318 Ex. 14 ¶ 92; *see also* D.I. 348 Ex. 15 at 197-203) Accordingly, this portion of Align's motion will be denied.

### iii.    Anticipation

Align seeks to exclude Dr. Saber's anticipation opinion as unreliable. In particular, Align contends that Dr. Saber fails to show that the Imgrund reference discloses each and every element of claim 13 of the '757 patent, instead opining that Imgrund could be modified to meet claim 13, which is not a proper anticipation opinion. (D.I. 317 at 25-26; *see also* D.I. 318 Ex. 12 ¶ 83; *see also* D.I. 318 Ex. 13 at 323-27) Align further argues Dr. Saber's opinion regarding the "tooth wear" embodiment is based not on Imgrund's disclosure at all but on what Dr. Saber characterizes as "other well-known methods." (D.I. 317 at 27-29; *see also* D.I. 318 Ex. 15 ¶ 33; *id.* Ex. 13 at 312 ("[Q] So your anticipation analysis of Imgrund requires knowledge outside the four corners of Imgrund, right? [A]: Well, knowledge of person of ordinary skill in the art."))

3Shape answers that Align wrongly focuses on Dr. Saber's deposition testimony without giving credit to his fully-disclosed, element-by-element opinions provided in his opening and reply expert reports. (D.I. 345 at 27-28; *see also* D.I. 348 Ex. 16 ¶¶ 74-144; *id.* Ex. 23 ¶¶ 24-52) To 3Shape, Dr. Saber's deposition testimony merely provides additional opinions, including regarding inherency, but do not in any way contradict his anticipation opinions expressed in his reports. (D.I. 345 at 28; *see also* D.I. 348 Ex. 16 ¶¶ 74-144; *id.* Ex. 23 ¶¶ 24-52; *id.* Ex. 15 at 271)

The Court agrees with Align that Dr. Saber's anticipation opinions should be excluded because they violate the "each and every element" requirement for anticipation. *See, e.g., Seachange Int'l, Inc. v. C-Cor Inc.*, 413 F.3d 1361, 1379 (Fed. Cir. 2005) ("[A] claim is anticipated if each and every limitation is found either expressly or inherently in a single prior art reference.") (internal quotation marks omitted). As Dr. Saber acknowledged at his deposition, his analysis relies not only on Imgrund, but also on various other information that he claims a POSA would have known. (*See* D.I. 318 Ex. 13 at 312) Dr. Saber's analysis also improperly

invokes the doctrine of inherency with respect to Imgrund as applied to claim 15. As became clear at deposition, Dr. Saber fails to show more than a mere possibility that one would display an indication on a second model simply because he or she has done so on a first model, which is an insufficient basis for invalidating a patent claim as anticipated. *See Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1192 (Fed. Cir. 2003) ("A claim limitation is inherent in the prior art if it is necessarily present in the prior art, not merely probably or possibly present.").

Hence, the Court will grant this portion of Align's motion.

### iv.    Obviousness

Align seeks to strike Dr. Saber's obviousness opinion on the basis that it is conclusory because he fails to perform an element-by-element analysis of the claims and provides no evidence regarding any motivation to combine. (D.I. 317 at 29-30; *see also* D.I. 318 Ex. 12 ¶ 145; *id.* Ex. 15 ¶ 53) Align again points to Dr. Saber's deposition testimony, in which he states that he did not "identify a specific element that's missing" in Imgrund. (D.I. 317 at 30; D.I. 318 Ex. 13 at 289)

In response, 3Shape points out that in his opening report, Dr. Saber put Align on notice of his obviousness opinion and explicitly "reserve[d] [the] right to further explain the details of the obviousness of the asserted claims based on Imgrund in response to any arguments offered by Align." (D.I. 345 at 31; *see also* D.I. 318 Ex. 12 ¶ 145) After receiving the report of Align's validity expert, Dr. Bovik, Dr. Saber addressed Dr. Bovik's rebuttal obviousness arguments both at deposition and in his reply report. (D.I. 345 at 31; *see also* D.I. 348 Ex. 15 at 315 (explaining that POSA would understand what subtraction operations could have been used); *id.* Ex. 23 ¶ 48 ("[O]ne of ordinary skill in the art would have found it obvious to perform the processing disclosed in Imgrund on the second virtual model instead of the first virtual model."))

19

The Court agrees with Align that Dr. Saber's obviousness opinions fail as a matter of law and should be excluded. As Align correctly states, the entirety of Dr. Saber's obviousness analysis consists of a conclusory paragraph in his opening report and a similar paragraph in his reply report, in which he opines that based on Imgrund the asserted claims "would have been obvious" to a POSA and "nothing in the [a]sserted [c]laims . . . would have been non-obvious." (D.I. 318 Ex. 12 ¶ 145; *see also id.* Ex. 15 ¶ 53) He does not identify an element missing from Imgrund (*see* D.I. 318 Ex. 13 at 289) or where or why that element would have nonetheless been obvious to a POSA.

Accordingly, the Court will grant this portion of Align's motion.

### v.    Sections 101 and 103

Similar to its motion with respect to Dr. Egbert's opinions relating to the '330, '364, and '916 patents, Align seeks to exclude Dr. Saber's §§ 101 and 103 opinions with respect to the '757 patent. (D.I. 317 at 30-33) Align argues that Dr. Saber's opinions are unreliable, conclusory, unhelpful, and confusing because they relate to dentistry, which is outside the scope of Dr. Saber's expertise, which concerns 3D computer modelling. (D.I. 317 at 30-32) Align adds that Dr. Saber's lack of dental knowledge or expertise renders unreliable his opinions on, for example, what a dental patient history would have been understood to include. (D.I. 317 at 32; *see also* D.I. 318 Ex. 12 ¶¶ 226-30, 236, 240, 312-17, 322, 324, 330)

3Shape's arguments in opposition to Align's motion echo those with respect to the motion directed to Dr. Egbert. Specifically, 3Shape argues that Dr. Saber does not purport to offer any opinion as an expert in dentistry; rather, Dr. Saber reviewed dentistry-related information in conducting his analysis, which is typical of someone in his fields of computer science and engineering. (D.I. 345 at 32-33)

As discussed above, the § 101 issues are moot for reasons discussed below in connection with 3Shape's motion for summary judgment. As for § 103, like Dr. Egbert's opinions, Dr. Saber's pass muster under *Daubert* as well. Dr. Saber is an expert in the field in which 3Shape intends to offer testimony and his opinions are supported in the record. Align's criticisms go to the weight, not the admissibility, of Dr. Saber's testimony.

Accordingly, the Court will deny this portion of Align's motion.

### d.    Dr. Feit

Align asks the Court to strike Dr. Feit's fact declaration because (i) Dr. Feit, a dentist, does not qualify as a POSA (*see* D.I. 318 Ex. 11 ¶¶ 4-6); and (ii) the declaration was untimely, as it was prepared after the close of fact discovery and includes facts not disclosed during fact discovery (*see generally* D.I. 318 Ex. 11; *see also* D.I. 317 at 33)  Alternatively, to the extent 3Shape is offering Dr. Feit as an expert, Align seeks exclusion for lack of qualification. (D.I. 317 at 33)

3Shape responds that the declaration Align seeks to strike is an expert report, not a fact declaration, and that it intends to offer Dr. Feit as an expert in the field of dentistry. (D.I. 345 at 36)  To 3Shape, Dr. Feit's report was timely because it was served with the opening expert reports. (*Id.*)  Dr. Feit, 3Shape continues, is an expert in dentistry, even though he is not a POSA as the parties characterize such a person in the context of this case. (*See id.*)

The Court agrees with 3Shape that Dr. Feit is qualified as an expert in the field of dentistry, as he has specialized knowledge and expertise in that field, and that field is sufficiently connected to the subject matter of the asserted patents. (*See* D.I. 318 Ex. 11 ¶¶ 4-6, App'x A; *see also SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1373 (Fed. Cir. 2010) (expert testimony admissible because witness's "testimony established an adequate relationship between

21

his experience and the claimed invention")) The Court is not persuaded by Align that Dr. Feit's declaration is "merely . . . factual testimony on historical observations regarding analog dentistry practices." (D.I. 360 at 19; *see also, e.g.*, D.I. 318 Ex. 11 ¶¶ 8-15) Instead, it is a proper and timely expert disclosure.

Accordingly, the Court will deny this portion of Align's motion.

## B.    Summary Judgment

### 1.    3Shape's Motion for Summary Judgment

#### a.    Non-infringement of '757 patent

3Shape moves for summary judgment of non-infringement of the '757 patent on two grounds: (i) that Align cannot show infringement of the "indication" recitation in the claim term "an indication of the intraoral area of interest," because Align's position is inconsistent with the scope of the claim; and (ii) that Align cannot show infringement of the "determining" limitation, because Align's theory is based on an improper reading of claim 13. (D.I. 301 at 1)

In the claim construction process, the Court ordered that the "indication" term should be afforded its plain and ordinary meaning. (D.I. 177 at 6-7) ("The Court is not persuaded that the claim also requires the indication be remote from and pointing to the area of interest, but only that the indication identify the area of interest's location when the area is hidden from view.") 3Shape argues that Align's literal infringement theory is legally flawed because it is based on an interpretation of the "indication" limitation – which appears in independent claim 13 – that is inconsistent with the Court's plain and ordinary meaning construction. (D.I. 301 at 5) 3Shape characterizes Dr. Badler's opinion (*id.* at 6-7) – that the red and yellow areas shown in 3Shape's TPM product meet the "indication" limitation (i.e., the areas of interest "possibly extend beyond what's visible," so a practitioner could rotate the model to find any hidden red or yellow areas) (*see, e.g.*, D.I. 319 Ex. 13 at 86-87, 115-16) – as wrong as a matter of law, because it requires the

user to rotate the model so that the previously hidden view is visible before determining whether and where any area of interest exists.  3Shape further contends that Dr. Badler's DOE opinion on the "indication" clause is conclusory and inadequate. (D.I. 301 at 8; *see also* D.I. 319 Ex. 12 ¶ 160)

Align responds that 3Shape improperly relies on decontextualized *dicta* in the Court's claim construction opinion, rather than the construction adopted in the Court's order.  (D.I. 341 at 2)  Align argues that the "indication" limitation can be satisfied when an area of interest (depicted in yellow or red) is partially visible even as the remainder is hidden from view.  (D.I. 339 Ex. 17 ¶¶ 155-56; *id.* Ex. 20 ¶¶ 31-32; D.I. 1 Ex. 1 at 25:22-32, 43-55)  Align adds that Dr. Badler provides a fulsome analysis of traditional DOE factors and his analysis is not conclusory. (D.I. 339 Ex. 17 ¶¶ 153-61)

Genuine disputes of material fact preclude granting 3Shape's motion with respect to the "indication" limitation.  A reasonable jury could credit Dr. Badler's opinions and find that Align has proven 3Shape's accused device literally meets this claim limitation.  (*See, e.g.*, D.I. 1 Ex. 1 at 25:22-32, 25:43-55; D.I. 339 Ex. 20 ¶¶ 31-32)  Alternatively, a reasonable juror could be persuaded by Dr. Badler's sufficient (though not necessarily "fulsome") DOE analysis.  (*See, e.g.*, D.I. 339 Ex. 17 ¶¶ 160)

3Shape's motion also presents issues with respect to the "determining" limitation of claim 13.  That claim recites, in pertinent part:

> A method comprising:
>
> receiving a plurality of intraoral images of a dental site;
> identifying, by a processing device and based on the plurality of intraoral images, a plurality of voxels satisfying a criterion;
> determining a subset of the plurality of voxels that are proximate to one another;

> grouping the subset of the plurality of voxels into an intraoral area
> of interest; . . . .

(D.I. 319 Ex. 4 at cl. 13)

3Shape argues that Dr. Badler's infringement analysis with respect to the "determining" limitation is legally flawed because it fails to recognize that the method steps of claim 13 must be performed in the order listed in the claim. (D.I. 301 at 8-9) Dr. Badler's analysis relies on the "determining" substep occurring before the "identifying" substep. (D.I. 319 Ex. 12 ¶¶ 124, 134, 146-47; *id.* Ex. 13 at 223-24) To 3Shape, however, the "only possible way" to "determine" a subset of the plurality of voxels is to first "identify" the plurality of voxels – the opposite order from that described by Dr. Badler. (D.I. 301 at 9-10) Nor has Dr. Badler adequately found infringement under DOE, in 3Shape's view, because he fails to show that performing the steps out of order is equivalent to performing them in the claim's order. (D.I. 301 at 10; *see also* D.I. 319 Ex. 12 ¶¶ 141-42)

Align responds that claim 13 does not require a specific order of the identifying and determining limitations, and 3Shape never sought a claim construction requiring a particular order. (D.I. 341 at 8) Align points to Dr. Badler's opinion that there is no technological reason why a determination of a subset of the plurality of voxels could not occur before the identification of a plurality of voxels. (*Id.* at 9; *see also* D.I. 339 Ex. 20 ¶¶ 25, 27; *id.* Ex. 17 ¶¶ 73-75, 119-30)

Again, genuine disputes of material fact make summary judgment of non-infringement unwarranted, both with respect to literal infringement and DOE. The Court's claim construction does not require the steps of claim 13 to be performed in a specific order. Nor has 3Shape shown, even in connection with its most recent briefing, that a precise order of claim steps is required "as a matter of logic or grammar," which is the basis for 3Shape's assertion. (D.I. 363

at 4; *see also Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369-70 (Fed. Cir. 2003) (establishing "matter of logic or grammar" as predicate to requiring order of claim steps); D.I. 339 Ex. 17 ¶¶ 116-43 (Dr. Badler explaining no order of steps required); *id.* Ex. 20 ¶¶ 25, 27 (same)) A reasonable juror could credit Dr. Badler's analysis and find infringement of the "determining" limitation, literally or by equivalents. This portion of 3Shape's motion will be denied.

### b.    Pre-suit damages

3Shape moves for summary judgment of no pre-suit damages for any infringement of the '330, '364, and '916 patents, arguing that Align has no evidence of marking or actual notice as required by 35 U.S.C. § 287(a). (D.I. 303 at 1-3) 3Shapes argues that because Align's products practice these asserted patents (*see* D.I. 303 at 2; D.I. 319 Ex. 14 at 15-16), Align is required to satisfy the constructive notice requirements under § 287(a), yet it has failed to do so. (D.I. 303 at 2; D.I. 319 Ex. 14 at 15-16) In addition, 3Shape points to (i) the opinion of Align's damages expert, Mr. Bakewell, that Align sold physical models that practice the claimed systems and methods at least as early as the third quarter of 2016, and (ii) Align's interrogatory responses that, according to 3Shape, establish that Align had a duty to mark as early as the 2013 issue date of the '364 patent. (D.I. 303 at 2-3; D.I. 319 Ex. 16 at Ex. 5.2; *id.* Ex. 14 at 15-16) 3Shape further contends there is no evidence that Align gave 3Shape actual pre-suit notice of Align's infringement claims with respect to any of these three asserted patents. (D.I. 303 at 3)

Align responds that the record shows it has practiced its '330 and '364 patents but not the '916 patent (at least during the pre-suit period). (D.I. 346 at 1) Align seeks pre-suit damages

only for infringement of the '364 and '916 patents. (*Id.* at 1-2)[4] Align contends it was not

required to mark under with respect to the '364 patent because that patent only contains method

claims. (*Id.* at 2) Regarding the '916 patent, Align "does not currently contend it has practiced

the '916 patent during the pre-suit period," so it had no products to mark. (*Id.* at 2-3)

A patent owner who fails to mark its products, or fails to require its licensees to mark

their products, cannot recover damages relating to infringement occurring prior to the date that

the alleged infringer receives actual notice of the alleged infringement. *See* 35 U.S.C § 287(a)

("In the event of failure so to mark, no damages shall be recovered by the patentee in any action

for infringement, except on proof that the infringer was notified of the infringement and

continued to infringe thereafter, in which event damages may be recovered only for infringement

occurring after such notice. Filing of an action for infringement shall constitute such notice.").

"[T]he actual notice requirement of § 287(a) is satisfied when the recipient is informed of the

identity of the patent and the activity that is believed to be an infringement, accompanied by a

proposal to abate the infringement, whether by license or otherwise." *SRI Int'l, Inc. v. Advanced

Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997); *see also Lans v. Digital Equip. Corp.*,

252 F.3d 1320, 1327 (Fed. Cir. 2001) ("[T]he actual notice requirement of § 287(a) demands

notice of the patentee's identity as well as notice of infringement."). "[T]he notice must arise by

an affirmative act on the part of the patentee which informs the defendant of infringement." *U.S.

Philips Corp. v. Iwasaki Elec. Co. Ltd.*, 505 F.3d 1371, 1375 (Fed. Cir. 2007) (internal quotation

marks omitted); *see also Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187

---

[4] Align's claim for pre-suit damages with respect to infringement of the '330 patent is
contingently tied to 3Shape's requested construction of "couples together with," which the Court
has rejected (*see supra*). Thus, 3Shape's motion for summary judgment of no pre-suit damages
with respect to infringement of the '330 patent is denied as moot. (*See* D.I. 346 at 3)

(Fed.Cir.1994) ( "The correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer.").

The Federal Circuit has stated that "[t]he law is clear that the notice provisions of § 287 do not apply where the patent is directed to a process or method." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1332 (Fed. Cir. 2010) (internal quotation marks omitted); *see also Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001) ("Because the [asserted] patent only claims methods, the notice provisions of § 287(a) do not apply to it."). Where a patent contains both apparatus claims and method claims, the marking requirement does apply. *See Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538-39 (Fed. Cir. 1993).

Here, the Court agrees with 3Shape that claims 16 and 17 of the '364 patent are mixed method and apparatus claims and, hence, marking is required.[5] Align's expert, Dr. Stevenson, acknowledges in his responsive report that "the asserted claims of the '364 patent . . . require the physical, tangible result of a physical model." (D.I. 319 Ex. 9 ¶ 176)[6] As in *American Medical Systems*, 6 F.3d at 1539, then, "there [is] a physical device produced by the claimed method that [is] capable of being marked" – specifically, the digital model and the physical model (i.e., "a

---

[5] Because the parties now agree that claim 19 does not require a physical model (*see* D.I. 338 at 2; D.I. 364 at 1), it follows that no marking is required as to that claim because there is no "physical device produced by the claimed method that [is] capable of being marked." *Am. Med. Sys.*, 6 F.3d at 1539. Thus, the motion is denied as moot with respect to claim 19.

[6] Align contends that Dr. Stevenson's statement with respect to claim 19 was an inadvertent error. (D.I. 338 at 3) Align points to Dr. Stevenson's report and deposition testimony agreeing with Align's view that claim 19 does not require producing a physical model. (D.I. 338 at 2; D.I. 339 Ex. 14 ¶¶ 260, 292, 313, 595; *id.* Ex. 15 at 309; D.I. 315 Ex. F ¶ 100) Given the clarity of the claim language and the other evidence in the record, including the parties' agreement that claim 19 does not require a physical model (*see supra* n.5), the Court does not discern a genuine dispute of material fact as to whether claim 19 requires producing a physical model, notwithstanding Align's assertions about Dr. Stevenson's purported error.

positive physical three dimensional (3D) model including physical model components").

Because it is undisputed that Align did not mark its products that practice the '364 patent, and

Align has provided no evidence of actual notice, Align cannot recover damages for infringement

of the '364 patent occurring prior to the filing of this lawsuit. (*See generally* D.I. 303, 346)

Regarding the '916 patent, 3Shape contends that it relied on Align's admission in its

interrogatory response that it did practice this patent. (*See* D.I. 361 at 1) (citing D.I. 319 Ex. 14

at 15-16) But 3Shape does not dispute Align's assertions that no expert has opined that Align

practiced the patent; indeed, as of the service of Dr. Stevenson's report on November 25, 2019,

Align has not asserted that it practiced the '916 patent. A reasonable juror could find that Align

did not practice the '916 patent prior to this lawsuit and, therefore, did not have an obligation to

mark. Therefore, summary judgment of no pre-suit damages is not warranted with respect to the

'916 patent.

Accordingly, the Court will deny 3Shape's motion as moot with respect to the '330

patent, grant it with respect to the '364 patent, and deny it with respect to the '916 patent.

### c.    Invalidity of the '330, '364, and '916 patents

3Shape seeks summary judgment that the asserted claims of the '330, '364, and '916

patents are invalid as being directed to nonpatentable subject matter under 35 U.S.C. § 101. (D.I.

305 at 1) The Court will deny this portion of 3Shape's motion.[7]

---

[7] Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." There are three exceptions to § 101's broad patent-eligibility principles: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). "Whether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012), the Supreme Court set out a two-step "framework for distinguishing patents that claim laws of nature, natural

At step one of the *Alice* test, 3Shape contends that all asserted claims of the '330, '364, and '916 patents[8] are directed to abstract, fundamental concepts of dentistry applied to a generic computer, specifically, "using a computer system to model a patient's dentition." (D.I. 305 at 10, 12)  In 3Shape's view, the patents encompass no more than use of a generic computer to apply conventional modelling techniques to a virtual setting; they fail to disclose specifics that improve computer functionality or computer modelling techniques. (*Id.* at 13-14)  Align responds that the claims, in light of the specification, are directed to a non-conventional improvement in digital dentistry and provide methods and systems for converting digital data to physical models. (D.I. 340 at 1)  Thus, according to Align, the asserted patents "provide the technological solution of virtually adding specific, innovative alignment structures that were never contemplated in the prior art and ***then*** creating corresponding physical models." (D.I. 340 at 3; *see also* D.I. 1 Ex. 7 at Figs. 3 & 4)

3Shape's motion fails at step one, as the asserted claims of the '330, '364, and '916 patents are not directed to abstract, patent-ineligible subject matter.  3Shape's characterization of the subject matter as "no more than the digitization, using a generic computer, of fundamental concepts in dentistry – long-performed in analog" (D.I. 305 at 1) is an oversimplification.  The

---

phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014).  At step one, "the claims are considered in their entirety to ascertain whether their character *as a whole* is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (emphasis added).  At step two, courts must "look to both the claim as a whole and the individual claim elements to determine whether the claims contain an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *McRO, Inc. v. Bandai Namco Games Am. Inc.* 837 F.3d 1299, 1312 (Fed. Cir. 2016) (internal brackets and quotation marks omitted).

[8] 3Shape asserts that any independent claim of any of these patents could be considered representative of the others. (*See* D.I. 305 at 10 n.4)

Court, instead, agrees with Align: "[w]hile it is true the claims here *involve* using a computer, they are ***directed to*** specific technological improvements in digital dentistry, embodied in the specific claimed structural components to precisely simulate occlusion alignment in physical models based on 3D data." (D.I. 340 at 9)  The technological improvement captured in the claims is further confirmed in light of the specification, which explains that the patents address a previously unsolved problem relating to generating physical models from digital data – a technological problem that arose with the introduction of digital dentistry. (*See, e.g.*, D.I. 1 Ex. 7 at 4:49-54, 5:4-41)

The Court's holding with respect to step one provides a sufficient basis to deny 3Shape's motion relating to its Section 101 challenges (and renders irrelevant all evidence solely relating to Section 101).  It is not necessary even to address step two. *See, e.g., Vanda Pharm. Inc. v. West-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1134 (Fed. Cir. 2018).  Nonetheless, the record concerning step two provides another basis to deny the motion for summary judgment.  While 3Shape insists that "[a]t most, the claims apply known 3D modelling algorithms to visualize known dental modelling concepts" (D.I. 305 at 17), there is sufficient evidence in the record from which a reasonable jury could find, as Align contends, that "the invention provides improved and precise occlusion alignment for a physical model due to the creation of the specific virtual alignment structures as claimed" (D.I. 340 at 11-12), which was not conventional, well-understood, or routine on the pertinent date (*see, e.g.*, D.I. 1 Ex. 7 at 3:4-20, 5:42-58; D.I. 400 Ex. 46 ¶¶ 24-34; D.I. 339 Ex. 25 at 290-300 (Dr. Feit acknowledging embodiment of Figure 4 was not disclosed in prior art))

Accordingly, the Court will deny 3Shape's motion with respect to Section 101.

#### d.    No direct infringement of '364 and '916 patents

As to the '364 patent, 3Shape moves for summary judgment of no direct infringement of claims 16 and 17[9] based on what 3Shape contends is Align's lack of evidence that 3Shape has prepared a physical model within the United States.  (D.I. 307 at 2)  As to the '916 Patent, 3Shape moves for summary judgment of no direct infringement of claims 1 and 3-21 based on Align's purported lack of evidence that 3Shape "made, used, sold, offered for sale, or imported the entire claimed systems."  (D.I. 307 at 3) (internal quotation marks omitted)

The Court agrees with Align that, with respect to both the '364 and '916 patents, the record contains circumstantial evidence a reasonable jury could credit and find that 3Shape prepares physical models in the United States.  (D.I. 338 at 1)  There is evidence to support a finding that 3Shape uses 3Shape Model Builder, provides training on its products, and brings Dental System (which includes Model Builder) and 3D printers to its booths at trade shows and to training sessions – all within the United States.  (*See, e.g.*, D.I. 339 Ex. 8 at 10-14, 21-25, 52-53, 77-78; *id.* Ex. 9 at 192-93; *id.* Ex. 10 at 3Shape1646_DC_00136054, -56; *id.* Ex. 11 at 3Shape1646_DC_00143774-75; *id.* Ex. 12 at 3Shape1646_DC_00135671-74, -81, -88-89, -91-94; *id.* Ex. 13 at 378-79, 381-83, 387)  Thus, genuine disputes of material fact preclude granting summary judgment to 3Shape on this issue.

#### e.    Equitable estoppel regarding '330, '364, and '916 patents

To establish equitable estoppel, an alleged infringer must show by a preponderance of the evidence that: (1) the patentee, through misleading words, conduct, or silence, led the alleged infringer to reasonably infer that the patentee did not intend to enforce its patent rights; (2) the

---

[9] Through the briefing, the parties agreed that claim 19 does not require a physical model, so 3Shape's request for summary judgment of no direct infringement of claim 19 is no longer at issue. (*See* D.I. 307 at 1 n.2; D.I. 338 at 2; D.I. 364 at 1)

alleged infringer relied on the patentee's conduct; and (3) due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim. *See A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1041, 1046 (Fed. Cir. 1992), *abrogated on other grounds*, *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954 (2017). "To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security in going ahead with [for example] building the plant." *Id.* at 1043; *see also id.* ("[T]he prejudice may be a change of economic position or loss of evidence.").

3Shape moves for summary judgment that Align is equitably estopped from asserting infringement of its '330, '364, and '916 patents. 3Shape contends that Align's active conduct and inaction with respect to 3Shape's accused Model Builder software, combined with the parties' relationship and contacts, show that Align did not intend to enforce these patents against 3Shape. (D.I. 310 at 2)  Among the evidence 3Shape points to as evidence of Align's conduct is: the parties' communications as early as 2011 regarding the Model Builder software (D.I. 319 Ex. 18 at 181-82 & Ex. 17); 2012 communications from 3Shape seeking Align's approval for 3Shape to include an iTero articulator compatible interface in Model Builder (D.I. 319 Ex. 18 at 185-86, 189-92); Align's internal documents regarding its decision not to respond to 3Shape's request due to intellectual property ("IP") concerns (*id.*); an Align executive's subsequent discussion with 3Shape at an industry conference in 2013 regarding 3Shape's potential addition of an iTero Articulator interface into its software and regarding IP concerns (D.I. 319 Ex. 22 at 114-15, 112-24, 192-93); the parties' awareness of labs using 3Shape's Model Builder in connection with iTero scans (D.I. 319 Ex. 20 at 20-21, 101-02, 173; *id.* Ex. 21 at 118-20); testimony from 3Shape Vice President of product strategy, Dr. Fisker, regarding his belief that 3Shape had Align's

blessing to offer Model Builder, because Align knew that a number of customers were using Model Builder to design models from iTero scans (D.I. 319 Ex. 22 at 367-68, 388, 392-93); and collaboration between 3Shape and Align, including a term sheet signed by the parties around November 2016 to enhance connectivity between iTero and 3Shape's lab software (D.I. 319 Ex. 23 at 128-31, 133-36 & Exs. 16-17).

As to the second element, 3Shape contends it has established reliance by showing that the parties engaged in "a collaborative relationship and ongoing communications related directly to the [Model Builder] software, which lulled 3Shape into a sense of security in going ahead with the [Model Builder] software." (D.I. 310 at 5)  Finally, as to the third element, 3Shape argues that (i) evidence regarding inventorship, validity, and other defenses was lost due to Align's delay; and (ii) 3Shape has suffered economic prejudice, including investment of time and resources put into Model Builder and Align's iTero scans, as well as 3Shape's efforts to obtain patents for, market, and release new versions of its product. (*Id.* at 6-7; *see also, e.g.*, D.I. 319 Ex. 17 at 71; *id.* Ex. 19 at 94-98; *id.* Ex. 20 at 102-03, 173; *id.* Ex. 21 at 92-100; *id.* Ex. 22 at 419-20; *id.* Ex. 23 at 156-57; *id.* Ex. 27 at 148)

Align responds that the record reveals fact disputes with respect to each of the three elements of equitable estoppel.  As to the first element, Align argues that alleged conduct that predates the issuance of Align's patents cannot support 3Shape's claim, while the post-issuance conduct creates genuine disputes of material fact, including whether the alleged conversations between 3Shape and Align related to the asserted patents or the accused functionalities (D.I. 343 at 2, 5; *see also* D.I. 319 Ex. 18 at 123-24), and regarding Align's knowledge of Model Builder (D.I. 343 at 2-3; *see also, e.g.*, D.I. 339 Ex. 33 at 154-61; *id.* Ex. 34; D.I. 319 Ex. 18 at 182-85; *id.* Ex. 21 at 86-87; *id.* Ex. 22 at 403; *id.* Ex. 24 at 121-24, 151-53; *id.* Ex. 25 at 171-74).  Align

33

also points to evidence that it "never granted 3Shape permission to copy and add Align's iTero articulator interface to Model Builder" (D.I. 343 at 2-3; *see also* D.I. 339 Ex. 29 at 116; *id.* Ex. 30 at 178-80), and that the November 2016 term sheet does not show any potential abandonment of the patents (D.I. 343 at 4-5; *see also* D.I. 319 Ex. 23 at Ex. 16). As to the second element, Align argues that 3Shape worked with Align on an interface between the parties' products primarily to expand 3Shape's own customer base and not because of any belief that Align would not assert its patents against 3Shape. (D.I. 343 at 6; *see also* D.I. 339 Ex. 42 at 102-03; *id.* Ex. 43 at 51, 96, 179-80; *id.* Ex. 44 at 3Shape_ITC_00127967) As to the third element, Align argues that 3Shape fails to link the alleged conduct, reliance, and prejudice. (D.I. 343 at 7-8)

As an initial matter, the Court agrees with Align that pre-issuance conduct cannot make out 3Shape's claim. *See Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1131 (Fed. Cir. 2013). 3Shape must demonstrate it relied on post-issuance conduct for each patent it seeks to estop Align from enforcing against it. *See id.*

The Court further agrees with Align that genuine disputes of material fact exist with respect to each of the three elements of equitable estoppel and preclude the Court from granting 3Shape's request for summary judgment. For example, concerning the first element, the record could support a finding in favor of 3Shape or alternatively in favor of Align as to what Align knew about 3Shape's Model Builder and its functionality in connection with Align's iTero scans, and whether the conversations between 3Shape and Align related to the asserted patents or accused functionalities. Similarly, with respect to reliance, the record reveals genuine disputes as to the material facts of why 3Shape worked with Align on an interface between the parties' products. On prejudice, genuine fact disputes also remain, including as to whether 3Shape's

investments in Model Builder or its work with Align were motivated by a desire to otherwise benefit 3Shape.

Accordingly, the Court will deny 3Shape's motion on this issue.

### 2.    Align's Motion for Summary Judgment

Align moves for summary judgment that 3Shape directly and indirectly infringes claim 16 of the '330 patent and claim 19 of the '364 patent, and indirectly infringes claim 1 of the '916 Patent. Align further requests summary judgment that third parties have directly infringed the same claims by using Model Builder in the United States. (D.I. 314 at 1) The Court will deny Align's motion as there are genuine disputes of material fact with respect to each of the claims for which Align has moved.

With respect to direct infringement of claim 16 of the '330 patent, there is a genuine dispute of material fact at least as to whether 3Shape sells "a processor operably coupled to a computer readable storage medium comprising instructions which, when executed, cause the processor to" perform the steps in claim 16(a)-(d). (*See, e.g.*, D.I. 348 Ex. 1 ¶ 89; Ex. 2 at 248; Ex. 9 ¶¶ 64, 69; D.I. 315 Ex. V at 27-28) With respect to direct infringement of claim 19 of the '364 patent, there is a genuine dispute of material fact at least as to whether use of a 3Shape product involves providing "virtual model components corresponding to at least a part of each an upper arch and lower arch of a jaw" and "the spatial relationship between said upper arch and lower arch in occlusion" as the claim requires. (*See, e.g.*, D.I. 348 Ex. 1 ¶¶ 129, 131; D.I. 315 Ex. B at cl. 19)

Similarly, genuine disputes of material fact preclude summary judgment of indirect infringement with respect to each of the asserted claims of the '330, '364, and '916 patents. For example, a reasonable juror could side with either party on whether Align granted 3Shape or end

users an implied license to the three patents and whether 3Shape actively induced infringement.

(*See, e.g.*, D.I. 319 Ex. 22 at 367-68, 392-93; *id.* Ex. 27 at 29, 39-41)  A reasonable juror could

also find direct infringement by third parties through use of Model Builder in the United States.

(*See, e.g.*, D.I. 315 Exs. T, U, V, X, Y)

Accordingly, the Court will deny Align's motion.

## III.    CONCLUSION

An appropriate Order follows.